1

2

3

4

5

6

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 7 CHARLES E. ORTEGO,  JOHN S. APOLIS, VICTOR D. ARMFIELD, CHARLENE BALDRIDGE AS TRUSTEE FOR COKD TRUST, LA PRIEL C. BARNES, BOYD BARRY, GRANT P. BOWERY, ANDREW CHALMERS, STEVE CRISP, JENNIFER L. DUBROW, EDSON A. and PATRICIA G. ENGEL, LINDA FENGLER, STEPHAN R. FREELAN, EDWARD EARL LAWSON, LUMMI ISLAND LAND COMPANY, MARK MECH, LEE G. MUNDSTOCK, RICHARD OWEN, ANNA S. PONOMAREVA, GERALD G. SCHROEDER, HUGH B. and TERRIE L. SMITH, MARCIA SMITH, THOMAS L. AND ROSALEE WAGGONER, LOUISE and JOHN M. WEBER, | No.              SEA |

CHARLES E. ORTEGO,  JOHN S. APOLIS,
VICTOR D. ARMFIELD, CHARLENE
BALDRIDGE AS TRUSTEE FOR COKD
TRUST, LA PRIEL C. BARNES, BOYD
BARRY, GRANT P. BOWERY, ANDREW
CHALMERS, STEVE CRISP, JENNIFER L.
DUBROW, EDSON A. and PATRICIA G.
ENGEL, LINDA FENGLER, STEPHAN R.
FREELAN, EDWARD EARL LAWSON,
LUMMI ISLAND LAND COMPANY, MARK
MECH, LEE G. MUNDSTOCK, RICHARD
OWEN, ANNA S. PONOMAREVA, GERALD
G. SCHROEDER, HUGH B. and TERRIE L.
SMITH, MARCIA SMITH, THOMAS L. AND
ROSALEE WAGGONER, LOUISE and JOHN
M. WEBER,

No.              SEA

**COMPLAINT FOR RICO
VIOLATIONS, CORPORATE
DISSOLUTION, DAMAGES
AND OTHER RELIEF**

                           Plaintiffs,

                     v.

LUMMI ISLAND SCENIC ESTATES
COMMUNITY CLUB, INC., a Washington non-
profit corporation; and MARK R. SEXTON,
DOUGLAS CASH, RONALD C. BAIN, LESLIE
M. DEMPSEY, PAUL C. DEMPSEY,
BRIDGED LOTT, MEREDITH MOENCH,
KENT C. NIELSEN, J. TIMOTHY SLATER,
and KENNETH SWANSON, individuals,

                           Defendants.

Plaintiffs, through counsel, allege as follows:

COMPLAINT FOR RICO VIOLATIONS,
CORPORATE DISSOLUTION, DAMAGES
AND OTHER RELIEF  - 1

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

# I.    INTRODUCTION

1.    This is a complaint against defendant Lummi Island Scenic Estates Community Club (LISECC), a Washington nonprofit corporation, and ten of its current and recent past board directors individually, for said individual defendants' past and ongoing violations of the federal Racketeer Influenced and Corrupt Organization Act, 18 USC 1962(c) and (d); and other wrongs by them and LISECC; and seeking dissolution of LISECC under RCW 24.03.266, plus disgorgement, damages and treble damages under RICO and state law RCW 19.86 et seq., fees and costs, and other relief.  The individual defendants for several years have conducted LISECC as an enterprise engaging in a pattern of racketeering activity including mail and wire fraud. They have operated, are operating and in the future threaten to operate LISECC in a manner that is illegal, oppressive, and fraudulent, misapplying and wasting its assets, and harming lots owners in Lummi Island Scenic Estates (LISE) (a development on eastern Lummi Island, in Whatcom County, Washington) financially.  This includes by (a) causing LISECC to fraudulently and illegally collect dues from landowners in LISE, when the plat covenants requiring LISE owners to be members in LISECC and pay dues expired in 1990, as defendants knew, (b) misapplying dues and other LISECC revenue by charging dues and water costs to the 85% of owner-members who use only 10% of the water produced by LISECC, to benefit the 15% who are full time residents using 90% of the water, including defendants, their friends and relatives; (c) giving themselves and others exemptions from paying dues (related to "bound lots") when Washington courts ruled this is illegal, as they knew; (d) misleading members about dues authority and reserves, using the US mails and wires, by falsely sending notices claiming dues are owed, falsely telling LISE owners that LISECC has authority to collect dues after 1990, and falsely telling them LISECC reserves are well funded when reserves are only 2-4% funded,

COMPLAINT FOR RICO VIOLATIONS,
CORPORATE DISSOLUTION, DAMAGES
AND OTHER RELIEF  - 2

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

1   and concealing from owners that reserves are unfunded by some $8 million needed to replace the

2   80% of the water system well beyond its useful life, and which could collapse; (d) wasting

3   LISECC's water system and other assets by failing to act to replace the assets, depleting

4   reserves, failing to accumulate reserves, and using reserves funds for personal benefit;(e) cutting

5   off water and retaliating against those opposing the defendants' illegal operation of LISECC; and

6   (f) other wrongs.  In general, defendants are engaged in operating LISECC as a racketeering

7   enterprise for financial gain, to benefit themselves or their associates who are in the group of the

8   15% who are the some 60 full time-resident owners in LISE by illegally collecting dues and

9   financially burdening the 85% majority of LISE owners who are not full time residents at LISE.

10   This complaint seeks to end this racketeering scheme, remedy wrongs, obtain judgment declaring

11   LISECC has no authority to collect dues, and cause dissolution of LISECC under RCW

12   24.03.266 which would allow transfer of the water system to a public utility where it will be run

13   lawfully, fairly, under state regulation, and without being used as a RICO enterprise.

## II.      PARTIES JURISDICTION AND VENUE

15        2.1    Jurisdiction is proper in this State and court because defendant LISECC does

16   business in, "resides" in, and is headquartered in Whatcom County, Washington in the Western

17   District of the State of Washington.  The land related to LISECC is in Whatcom County.

18   Defendants Sexton, Cash, the Dempseys, Lott, Moench, Nielsen, Slater, and Swanson and reside

19   in Whatcom County, Washington, and defendant Bain resides in Canada.

20        2.2    Each individual defendant has served on the LISECC board of directors since

21   2011 and the defendants have controlled the board and LISECC since then.  Sexton, Cash,

22   Swanson, Lott and Slater currently are board members and control LISECC. Defendants Sexton,

23   Cash, the Dempseys, Moench, Swanson, Nielsen, and Lott are full time residents in their homes

24   COMPLAINT FOR RICO VIOLATIONS,      **Cleveland Stockmeyer PLLC**
CORPORATE DISSOLUTION, DAMAGES      8056 Sunnyside Ave. N.
AND OTHER RELIEF  - 3                 Seattle, WA 98103
                                      (206) 419-4385

1  in LISE on the eastern shore of Lummi Island, in Whatcom County.  Defendant Slater resides in

2  Bellingham, in Whatcom County, Washington.

3      2.3     The wrongs complained of took place in and are centered in Whatcom County

4  Washington.

5      2.4     LISECC affects interstate commerce operating extensively in interstate and

6  foreign commerce sending dues notices, newsletters and other bills, and certain false statements

7  alleged herein, through the US mails to many member owners outside Washington State.  Other

8  false statements were sent throughout many States and nations being published on the LISECC

9  website reaching member owners and the public in many places outside Washington State.

10  LISECC derives substantial revenue from outside Washington State, e.g., about one quarter of its

11  dues and other revenue.  About 25% of LISECC's member owners live outside Washington State

12  and on information and belief most of these send in their dues from outside of Washington State

13  (i.e., 29 in Canada, 19 in California, two each in Nevada, Arizona, and Oregon and one each in

14  Germany, Australia, Alaska, Montana New Hampshire, Ohio, Iowa, Virginia, Maryland, North

15  Carolina, Georgia and Florida) LISECC gets dues money and other money from such member

16  owners from outside of Washington State, in significant amounts.

17      2.5     Plaintiffs Charles E. Ortego, Victor D. Armfield, La Priel C. Barnes, Boyd Barry,

18  Grant P. Bowery, Steve Crisp, Jennifer L. Dubrow, Stephan R. Freelan, Edward Earl Lawson,

19  Lummi Island Land Company, Lee G. Mundstock, Richard Owen, Anna S. Ponomareva, Gerald

20  G. Schroeder, Hugh B. and Terrie L. Smith, Marcia Smith, Louise and John M. Weber, each

21  reside in Whatcom County Washington.  Other plaintiffs reside in other States or Canada.

22      2.6     Each plaintiff owns a lot in LISE and has paid dues and other charges to LISECC

23  in the last six years.

24  COMPLAINT FOR RICO VIOLATIONS,        **Cleveland Stockmeyer PLLC**
    CORPORATE DISSOLUTION, DAMAGES        8056 Sunnyside Ave. N.
    AND OTHER RELIEF  - 4                 Seattle, WA 98103
                                          (206) 419-4385

1    2.7    There are 266 voting members in LISECC.  Five percent of 266 is 13.3.  The

2  number of plaintiffs herein exceeds the "five percent of the voting power" for a dissolution claim

3  required in RCW 24.03.266.

4    2.8    This Court has federal question jurisdiction under 28 USC § 1331 as this case

5  includes RICO claims under 18 USC §1964(c) and (d).  This Court has jurisdiction over State

6  claims asserted herein under 28 USC Code § 1367(a) since such claims are so related to the

7  RICO claims that they form part of the same case or controversy under Article III of the United

8  States Constitution.  Venue is proper in this district under 18 USC §1965(a) because most

9  individual defendants and LISECC reside in or transact their affairs relating to LISECC in this

10  district.  Venue and jurisdiction in this district and State are proper as to defendant Bain, who

11  resides in Vancouver, B.C., Canada, because he does business in Washington State and or has

12  availed himself of the laws here by owning property here, or has multiple contacts here related to

13  this cause of action making the exercise of jurisdiction over him comply with due process in this

14  case.  Venue here is proper regarding Bain, under 18 USC §1965(b), as he owns land here (in

15  LISE, in Whatcom County) and transacts business related to LISECC and subjects of this

16  complaint by visiting LISECC offices or attending board or annual meetings in Whatcom County

17  or participating in the direction of LISECC in Whatcom County via the mails or phones; there is

18  no better district for this suit against him, his home is not far from this District and justice require

19  Bain be brought before the court here in one action with other defendants.

20    ## III.    FACTS

21  **A.    LISE Covenants Requiring Paying Dues to LISECC Expired in 1990**

22    3.1    LISE is a subdivision on Lummi Island, with some 447 lots, created in nine

23  instruments recorded from 1959 through 1965.  Defendant LISECC is a Washington nonprofit

24  COMPLAINT FOR RICO VIOLATIONS,                     **Cleveland Stockmeyer PLLC**
CORPORATE DISSOLUTION, DAMAGES                     8056 Sunnyside Ave. N.
AND OTHER RELIEF  - 5                                              Seattle, WA 98103
                                                                              (206) 419-4385

1    corporation claiming jurisdiction over all lots in LISE and the original covenants in the Plats for

2    LISE called for its creation but also stated the obligation to be a member was limited to 25 years

3    from filing, i.e., the membership obligation ended in 1990.

4        3.2    Today, LISECC illegally forces some 400 LISE owners to pay dues as members;

5    LISECC wrongfully exempts owners "bound lots" (discussed below) from paying dues.  The

6    voting membership is less than dues paying lots because some own several lots and in this case

7    the owner only gets one vote.

8        3.3    LISECC operates a private water system and recreational facilities including a

9    small marina, lake and clubhouse.  The water system was built in the 1960s, some 80% of its

10    estimated 26,000 feet of pipe are old concrete asbestos and reached the end of their useful life by

11    2000.  The system was not properly built originally.  Some 20% of the system was replaced in

12    about 2011, but the other 80% of the system has never been replaced and is well beyond useful

13    life, with the leakage rate peaking at 25 to 30% well beyond state requirements.  The system is in

14    danger of function or financial collapse (cascading repair bills).  The components requiring

15    replacement today, would cost some $8 million to replace or more, and there is no plan to

16    replace them.

17        3.4    Some 15% of 400 dues paying memberships are 50-60 members who are full time

18    residents.  The 15% includes eight of the ten defendants, such as current board president Sexton,

19    their friends and relatives, plus a high proportion of former board members.  The full time group

20    is largely friends and relatives of defendants.

21        3.5    The other 85% dues paying members are some 340 in number and they are not

22    full time residents; either they have lots with no water hook up or no home or if they have a

23    home and water they live at LISE only part time and less than full time.  Most lots in LISE have

24    COMPLAINT FOR RICO VIOLATIONS,                    **Cleveland Stockmeyer PLLC**
      CORPORATE DISSOLUTION, DAMAGES                    8056 Sunnyside Ave. N.
      AND OTHER RELIEF  - 6                             Seattle, WA 98103
                                                        (206) 419-4385

1    no home, and some 180 have no water hookup.

2        3.6    The 15% full time group uses 90% of the water produced by LISECC. The 85%

3    group uses 10% of the water produced by LISECC.  The 85% includes many using no water at

4    all plus many using very little water as they are on site rarely, just for a vacation trip in a camper

5    or otherwise less than full time.

6        3.7    The original plats only required lot owners in LISE to be members of and pay

7    dues to LISECC only for 25 years following the filing of the last plat.  This period of time

8    expired in 1990.  Other restrictive covenants in the original plats also expired in 1990.

9        3.8    Each subdivision plat of the latter seven instruments has language like that for

10    Div. 3 which states as follows:

11            *All lots, tracts, or parcels of land embraced within this plat shall be subject to the*
            *following restrictions for a period of twenty-five years* from the date of the recording of
12        this plat, and all sales or transfers of ownership of the lots, tracts, or parcels shall be
            subject to these RESTRICTIONS as follows:
13            1.    No lot . . . shall be subdivided  . . . whereby [it shall be] less than 7500 sq.
            ft. or less than 50 ft. in width at the building setback line.
14            2.    No structure or building shall be constructed on any lot, tract, or parcel of
            this plat closer than 20 ft. to the front property line [etc.].
15            3.    Construction of any lot shall require a building permit . . .
            4.    . . . Construction and use of private sewage disposal systems shall be in
16        accordance with the requirements of the County . . .
            5.    No building shall be placed or maintained on any lot except a private
17        dwelling,  . . the sole use of the owner or occupant . . . .
            6.    Exterior work on any building shall be completed within one year from the
18        start of construction.   . . . Exterior finish shall be of wood, stone, brick, glass, concrete,
            or like material. . . .
19            7.    Each lot is entitled to one hookup to the private water system.  . .
            8.    Ownership of those areas marked "Reserve" and Secondary Tidelands
20        owned will be conveyed to a private, non-profit corp. to be known as LUMMI ISLAND
            SCENIC EST. HOLDINGS INC.  *Ownership in any lot carries the ownership of one*
21        *membership in said corp. subj. to the Articles and By-Laws thereof.* Ownership of any lot
            in this plat shall convey to the owner thereof rights to areas marked "Reserve" on past
22        and future plats known as Div. 1, 2, 3, 4, etc. Lummi Is Scenic Est., also owners of lots in
            said subdivs. shall acquire proportionate in areas marked "Reserve". Ownership by
23        volunt. conveyance or contract is rest. to one individual or marriage community.

24    COMPLAINT FOR RICO VIOLATIONS,                 **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES                    8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 7                                Seattle, WA 98103
                                                         (206) 419-4385

[Emphases added.]

3.9     The membership obligation equates to an obligation to pay dues. From 1990 to the present, LISECC has collected dues. From 1990 to the present, LISECC's collection of dues and enforcement of its claimed member obligations has been unlawful and illegal.

3.10     The current LISECC bylaws and those first adopted in 1970 also expressed the 25 year time limit on the membership obligation. Art. 1.2.3.1. Part 2, "LAND COVENANTS," states in § 2.1.1.3 that, "All lots, tracts or parcels of land embraced within this plat shall be subject to the following restrictions for a period of twenty-five (25) years from the date of recording of this plat," and Bylaws §§ 2.1.2.1 through 2.1.2.8 quote the covenants in the plats ¶¶ 1-8 including the membership obligation. Bylaw §2.1.1.1 states these eight restrictions are "part of the plats" and "cannot be changed, altered, voided, or otherwise revised" by anyone, including LISECC ("the following dedication and its eight restrictions are a part of the plats of [LISE] and cannot be changed, altered, voided, or otherwise revised by any individual or group such as Lummi Island Scenic Estates Community Club"). LISECC's collection of dues since 1990 is an unlawful de facto change, alteration, voiding, and revision of the original plat covenants, erasing, in effect, the 25-year time limit on being a member and, in effect, changing this to read that membership obligations are "forever" or are "perpetual." This violates the original plats and the bylaws provisions including the one specifically stating that LISECC may not alter, amend or void the original plat language.

3.11     The Bylaws also state prior to any *dissolution* all recreational assets shall be turned over to Whatcom County Parks. The bylaws contemplated eventual dissolution of LISECC. The original plan was membership obligations expire by 1990, the eight paragraphs of

COMPLAINT FOR RICO VIOLATIONS,
CORPORATE DISSOLUTION, DAMAGES
AND OTHER RELIEF  - 8

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

1  restrictions expire in 1990, then LISECC may be dissolved, since most of its functions end,

2  leaving the door open to putting the water system in other hands such as a public utility.

3  **B.    Defendants Illegally Collect Dues Since 1990 and Lie About It**

4      4.1     Since 2011 each defendant has taken board votes to approve LISECC's illegal

5  collection of dues in approving budgets, legal actions, sending bills falsely stating dues are due

6  through the US mails, publishing newsletters and sending them through the mails and posting

7  them on the electronic website saying LISECC has dues authority forever, or otherwise.  Such

8  actions were done in concert and are unlawful, oppressive, and fraudulent and unreasonable.

9      4.2     Each defendant has known that there is no legal basis for dues collection and has

10  acted in bad faith in seeking and approving dues collection.

11      4.3     The amount of dues wrongfully collected by LISECC since 1990 is about $ 4.5 to

12  5 million.  This amount was collected illegally, fraudulently, and oppressively. The amount of

13  dues wrongfully collected since 2011 is some $1.2 million.  This was also collected illegally,

14  fraudulently and oppressively.

15      4.4     The amount of dues being wrongfully collected is now $350,000 a year as stated

16  in the 2015 budget.  The amount to be collected, illegally, fraudulently and oppressively and the

17  financial harm in the next three years will be over $1,000,000.

18      4.5     Defendants were and are and intend to continue, acting in concert and in a

19  conspiracy to illegally collect dues.  They jointly plan on getting millions more in dues from

20  LISE owners, illegally, in part to apply this money to ever increasing repair bills.

21      4.6     Defendants and LISECC rely on fraud and deception to get LISE owners to pay

22  the dues.

23      4.7     Defendants have relied on a document filed by LISECC with the county recorder

24  COMPLAINT FOR RICO VIOLATIONS,            **Cleveland Stockmeyer PLLC**
CORPORATE DISSOLUTION, DAMAGES          8056 Sunnyside Ave. N.
AND OTHER RELIEF  - 9                    Seattle, WA 98103
                                        (206) 419-4385

in 1990 entitled "Notice of Right to Impose Lien."  LISECC published this on its website on or about July 25, 2012 and again on April 8, 2013.  Defendants Sexton, Cash, Bain Moench and Nielsen supported this, with specific intent to deceive owners in LISE into paying dues and other charges.  This Notice falsely claims LISECC has ongoing authority to collect dues or assessments, by selectively quoting from the plat and not mentioning the dues obligation expired after 25 years.  This Notice states LISECC gives notice to all owners in LISE that ownership carries ownership of a membership in LISECC -- without quoting the 25-year time limit from the plats or the bylaws -- and this omission is fraudulent as it constituted changing a 25-year obligation to a perpetual obligation.  The Notice cites the bylaws provisions allowing dues to be collected, but fails to cite or quote the bylaws mentioned above noting the membership obligation was only for 25 years; this omission is also fraudulent.  By posting this on the electronic website such defendants intended for LISE owners to read this Notice and be deceived into thinking that it somehow extended or renewed LISECC dues authority after 1990 and such authority is perpetual and ongoing today and gives LISECC the right to impose dues in perpetuity.

4.8    The Notice was signed by then president Wally Croy. It states it was adopted by trustees of the corporation, i.e., the directors, but this Notice was not signed by all LISE owners nor by a majority but was filed unilaterally by action of the then board of directors of LISECC. The 1990 Notice is not a valid renewal or extension nor creation of a perpetual obligation to pay dues and each defendant has actual knowledge of this. Each knows relying on the Notice, is fraudulent and deceptive. Each has had specific intent to deceive member owners into paying dues via this Notice.

4.9    In 1990 Wally Croy, then board president, wrote in the annual meeting minutes

COMPLAINT FOR RICO VIOLATIONS, CORPORATE DISSOLUTION, DAMAGES AND OTHER RELIEF  - 10

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

1   that "any court would rule that the covenants being enforced for such a length of time have

2   become perpetual."  This claim that past practice makes dues authority perpetual was false and

3   was intended to deceive LISE owners into paying dues; at this  time this false document was sent

4   via the US mails to all LISE owners.

5        4.10    In the April 1999 meeting minutes then-president Small answered questions about

6   LISECC being defunct, saying, "as soon as this oversight was discovered it was rectified and that

7   by law there are three years in which to do this."  The statements this was rectified and there are

8   three years in which to do that were false, LISECC sent this through the US mails in 1999

9   intending to deceive owners in LISE into paying dues.

10        4.11    At the April 9, 2011 annual meeting LISECC board president Sexton stated

11   "Another big issue…is the question of the legitimacy of …the plat restrictions that every lot in

12   Scenic Estates has to pay dues and be a member."  Sexton then stated "Fortunately Tim

13   Carpenter and Wally Croy were on top of this in 1990 and filed court documents that extended

14   those potentially expiring plat restrictions for perpetuity."   These statements were false, each

15   defendant knows they are false yet each supports the continual republishing of these statements

16   via the website intending to deceive LISE owners into paying dues.  Certain defendants

17   specifically Sexton, Swanson, Paul Dempsey and Moench also approved publication of these

18   statements via mailing the annual meeting minutes to all members and posting the minutes to the

19   website.

20        4.12    At a May 20, 2012 board meeting, Sexton stated that "there is a renewal of

21   (LISECC's) covenants that was recorded in 1990." This was false, he knew it was false, each

22   defendant was aware of this statement and its falsity.  Since then defendants on the board

23   published this false statement on the website, specifically intending to decive LISE owners into

24   COMPLAINT FOR RICO VIOLATIONS,                    **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES                   8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 11                           Seattle, WA 98103
                                                      (206) 419-4385

1  paying dues.

2      4.13    In May 2012, in a small claims court case then in publications about it to

3  members, Sexton said the plat restrictions creating dues authority, had been renewed.  This

4  statement was publicized by LISECC via the US mails and electronically.  Defendants Sexton,

5  Cash, Bain and Moench were aware of this statement and its falsity.  They supported publishing

6  this statement with specific intent to deceive LISE owners into paying dues.

7      4.14    In 2011-2013, Ortego requested whatever court documents Sexton was talking

8  about.  None were provided.  Ortego wrote a letter to the community on Dec. 26, 2011,

9  protesting LISECC's refusal to provide what documents Sexton was referring to.

10  On June 24, 2012 in a board meeting, Sexton, Cash, Bain, Swanson and Moench, approved

11  cutting off Ortego's water, to retaliate against him because of his activity questioning LISECC's

12  claimed dues authority and other acts by Ortego opposing unlawful practices described herein.

13  The cut off was illegal and those defendants acted in concert and in a conspiracy to harm Ortego

14  to get his submission to their ongoing illegal acts.  While the water remains cut off today,

15  wrongfully, the attempt to cause submission has failed.  On July 18, 2012, LISECC responded to

16  Ortego's letter by posting the 1990 Notice document on its website.

17      4.15    This continuous republication of the Notice today, given Sexton's comments

18  quoted above, is an ongoing false representation through electronic communications that dues

19  authority expiring in 1990 was somehow extended or "renewed" to be perpetual when each

20  defendant knows this is false yet has supported this ongoing deception of LISE owners to get

21  them to pay dues money.

22      4.16    In 2012-13 defendants have tried a new deception, telling members through the

23  website that that the LISE plats and other documents gave LISECC perpetual dues authority

24  COMPLAINT FOR RICO VIOLATIONS,                **Cleveland Stockmeyer PLLC**
    CORPORATE DISSOLUTION, DAMAGES              8056 Sunnyside Ave. N.
    AND OTHER RELIEF  - 12                       Seattle, WA 98103
                                                 (206) 419-4385

from its original inception. Each defendant serving since then has known this position, communicated to members via newsletter and electronically, is false yet supports this falsehood intending to deceive LISE owners into continuing to pay dues.

4.17    In late 2014, each defendant on the board including Sexton, Bain, Cash, Lott, Nielsen, Slate and Swanson voted to increase the dues, so that the 2015 dues income will be $350,000. This is illegal because no dues at all are owing. This action approved sending dues notices, each knew to be false, to deceive hundreds of LISE owners into paying dues. The action increasing dues was communicated through the mails and on the website, with each defendant then serving including Sexton, Cash, Lott, Slater, and Swanson intending to deceive owners into paying dues.

4.18    Since 2011, each defendant while on the board has supported sending dues notices through the US mails claiming  dues are owed knowing dues are not owed, each specifically intending to deceive LISE owners into paying dues.

4.19    Each and all of defendants are acting in concert and conspiring to continue to use LISECC illegally to extract dues as this benefits the defendants and the 15% group while imposing burdens on the 85%. Defendants are engaged in this intentional illegal conduct for personal gain and for favoritism to their friends and relatives in the 15% full timer group. They intend to keep using LISECC this way making it an instrument for ongoing and continued and future oppression, fraud, and illegality harming the majority of members or LISE owners. The harm will be over $1 million in the next few years.

**C.    Defendants Misapply and Misappropriate Dues for Water Costs.**

5.1    Defendants misapply and misappropriate the dues money, illegally and oppressively, to pay most of the water costs i.e., to give the 15% full timer group financial gain,

COMPLAINT FOR RICO VIOLATIONS,
CORPORATE DISSOLUTION, DAMAGES
AND OTHER RELIEF  - 13

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

1    including defendants, while burdening the 85% with large costs of providing water to the 15%.

2         5.2    The vast majority of water costs, which exceed some $230,000 a year, are paid by

3    dues.  LISECC revenues today are some $297,000 a year including dues of $236,000 (as per the

4    2014 budget; this excludes withdrawals from reserves and certain income dedicated to a loan

5    repayment fund.  The cost of providing the water is some $230,000 annually.  This is paid by

6    $50,000 in water fees and the remaining $180,000 a year is paid from dues revenue.  Much of the

7    $180,000 in dues paying for water costs, is from the 85%.  The 15% group uses 90% of the

8    water, and get 90% of the benefit of expenditures for the water system.  The amount of dues

9    helping pay for their water is 90% of $180,000.  Subtracting their own dues, a net of some

10   $138,000 a year is the amount of dues from the 85%, wrongfully diverted to paying for water for

11   the 15%.

12        5.3    Each defendant while on the board, has supported this system of taking dues from

13   the 85% to pay for water for the 15% through budget and other votes while knowing this practice

14   is illegal.

15        5.4    Since 1990, LISECC collected well over $3 million in dues from the 85% to pay

16   for water for the 15%.

17        5.5    This is unlawful, oppressive and favoritism, because (a) no dues were required,

18   and (b) even if lawfully collected, it is unlawful, oppressive and favoritism to use dues money for

19   water costs or to use any revenue not proportioned to water use to pay for water costs. Using any

20   money not proportioned to use of water to subsidize water costs is unlawful, oppressive and

21   favoritism because 90% of the water is used by just 60 owners and to burden 340 owners to

22   benefit 60 is personal self dealing, favoritism, oppressive and unlawful -- burdens of a variably

23   used produce or service should be charged according to use. Misusing dues this way is unlawful

24   COMPLAINT FOR RICO VIOLATIONS,              **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES              8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 14                      Seattle, WA 98103
                                                 (206) 419-4385

1  for being unreasonable and not what a prudent director would do, violating fiduciary duties to

2  treat members equally and fairly and not for personal gain or in a way that is favoritism .  The

3  practice helps the 15%, including defendants, by harming the majority, the 85%.

4      5.6      Homeowners associations should not be operated to benefit one group or member

5  at the expense of the majority, see, e.g., *Fawn Lake Maint. Com'n v. Abers*, 149 Wn.App. 318,

6  324-326, 202 P.3d 1019 (Div. II, 2009) (disallowing dues exemption for bound lots, favoring

7  some by increasing financial burdens on majority is against the collective interest of the whole

8  community).

9      5.7      Each defendant plans to continue this misapplication of dues money to pay water

10  costs into the future.

11      5.8      Counting other money from the 85% (including bound lots dues exemptions,

12  $25,000, a monthly ready to serve fee charged to nonusers of some $12,000 a year, and some

13  $13,000 a year in a $71 per lot fee for a state water loan repayment, each of which is not a charge

14  proportional to use of water), the actual total wrongful diversion of money from the 85% for

15  benefit of the cost of providing water to the 15% is closer to $186,000 a year.   This annual

16  subsidy of $186,000 a year will increase on information and belief as repair bills mount

17  increasing operating costs and as dues are increased, each defendant plans on such increases, and

18  they are misapplying dues and other revenue in this manner unlawfully, oppressively, illegally

19  and for personal benefit acting in concert and in a conspiracy.

20  **D.    Defendants Exempt Bound Lots from Dues**

21      6.1      There are some 43 "bound lots" in LISE.  In LISECC parlance "bound lots" are

22  where one owner has the first lot plus 1-2 other contiguous parcels in LISE.   All bound lots have

23  homes and most homes on bound lots are occupied full time.  Almost all bound lots owners are

24  COMPLAINT FOR RICO VIOLATIONS,                    **Cleveland Stockmeyer PLLC**
    CORPORATE DISSOLUTION, DAMAGES              8056 Sunnyside Ave. N.
    AND OTHER RELIEF  - 15                              Seattle, WA 98103
                                                              (206) 419-4385

1   in the 15% full timer group.  Most owners of bound lots have been on the board or related to

2   board members by blood or friendship.  Sexton, Bain, Moench, Swanson and Nielsen own bound

3   lots.  Cash lives in his father-in-law's (Sexton's) home on bound lots.

4        6.2    In October, 2008 the board took action to incrementally revoke a dues exemption

5   for bound lots.

6        6.3    On May 15, 2011, Sexton, Moench, Swanson, and Paul Dempsey, voted to end

7   the program to incrementally revoke the bound lots dues exemption, and voted to reinstate full

8   dues exemptions for bound lots.  On October 2 and December 4, 2011 Sexton, Leslie Dempsey,

9   Moench, and Swanson voted for or supported a retroactive refund of some $30,000 in bound lot

10  dues collected in 2009-2011. In 2011 to the present, each defendant supported and voted for

11  budgets and or took other actions maintaining and ratifying the dues exemption for bound lots.

12  On October 21, 2012, Sexton, Cash, Nielsen and Moench voted to approve a bound lots dues

13  exemption.  Swanson has supported the bound lots dues exemption by seeking it for his bound

14  lot(s).

15       6.4    Since 2011, dues exemptions for bound lots have totaled some $117,000.   The

16  retroactive refund of dues for bound lots granted in 2011 is another $30,000.  From 2011 to the

17  present LISECC has exempted or rebated some $147,000 for bound lots.

18       6.5    The present amount of dues exempted for bound lots is some $31,218 (43 x

19  $726).  This exemption amount will increase in the future because dues will increase. The total

20  for bound lots exemptions from dues will be some $125,000+ in the next four years.

21       6.6    Exempting bound lots from dues was declared illegal in the 2009 case, *Fawn Lake*

22  *Maint. Com'n v. Abers*, 149 Wn.App. 318, 202 P.3d 1019 (Div. II, 2009).  It is unfair and

23  oppressive, also it is favoritism, because it shifts financial burdens away from bound lots owners

24  COMPLAINT FOR RICO VIOLATIONS,         **Cleveland Stockmeyer PLLC**
CORPORATE DISSOLUTION, DAMAGES        8056 Sunnyside Ave. N.
AND OTHER RELIEF  - 16          Seattle, WA 98103
                                     (206) 419-4385

(most of whom are in the 15%) onto to all other LISE owners (most of whom are in the 85%). The dues exemption for bound lots is illegal under the plat covenant stating that "ownership in any lot carries the ownership of one membership in" LISECC and illegal under by-laws Article 4.5.1.1 stating "annual dues levied upon a member shall (be) per lot as originally platted." It is unlawful as being unreasonable and under the fiduciary duty to treat beneficiaries equally and equitably, and not harm one group to benefit another.

6.7    Sexton, Bain, Moench and Nielsen own bound lots and Cash benefits from one as he lives on one owned by Sexton.  Swanson seeks to benefit from bound lots dues exemption having applied for the benefit.  Each of those defendants personally benefits from bound lots.

6.8    Each defendant supporting bound lots dues exemptions knew this practice was and is illegal; each specifically knew of the *Fawn Lake* case and on information and belief those supporting this dues exemption are acting in concert in a conscious conspiracy to exploit other members this way.  Because most defendants supporting bound lots dues exemption benefit from bound lots, this is also financially self interested action by them, but none recused himself or herself in the votes and budget actions approving bound lots dues exemption identified above.

6.9    Each defendant plans to continue this practice, which is illegal, oppressive, self interested, favoritism to the 15% group, also contrary to *Fawn Lake*.

**E.    Defendants Benefit by Charging Loan Fees on Non Water Users**

7.1    There are some 185 non-water users at LISE and 215 water users.

7.2    Since November 5, 2011, Sexton, Leslie Dempsey, Swanson, Moench, Bain, Cash, Nielsen, Lot, and Slater approved, and caused all LISE owners to pay equal amounts of $71 a year to LISECC to be sent to repay a loan from the State of Washington Drinking Water State Revolving Fund.  The loan provided funds for the replacement of 20% of the distribution

COMPLAINT FOR RICO VIOLATIONS,
CORPORATE DISSOLUTION, DAMAGES
AND OTHER RELIEF  - 17

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

1    pipes in the water system.

2        7.3    The gross revenue from this fee is $28,400 a year ($71 times 400).  The full timer

3    group of 60 pays $4,260 annually for this fee, but should pay $25,560 (i.e., some 90% of the total

4    fees each year of $28,400).  The full time group benefits from this by some $21,300 a year or

5    about over some $213,000 by 2021.  This is harm to most LISE owners.  The loan period is thirty

6    years.  Over thirty years this benefit to the full timer group and loss to the 85% will be some

7    $639,000.  This is harm to most LISE owners.

8        7.4    This loan for water costs should be charged in proportion to water use, and

9    charging LISE owners equally to pay this amount and charging those using no water is

10    unreasonable, unlawful, unfair, oppressive, self interested and favoritism to the 15%; it burdens

11    most LISE members to benefit the 15% full time group using 90% of the water.

12        7.5    Defendants know this is unlawful, oppressive, self interested and favoritism yet

13    each since 2011 has supported this practice in board votes or budget approvals.

14        7.6    Each defendant intends this to continue in the future, for decades, to obtain the

15    $639,000 benefit to the 15% group and in this each defendant will gain or keep thousands of

16    dollars personally.

17        7.7    Defendants plan on continuing this practice of charging this water cost to all

18    members regardless of use or non use of water.   Defendants are engaged in this wrongdoing

19    willfully and intentionally and act in concert to benefit themselves and the 15% who are full time

20    residents.

21    **F.    Defendants Commit Intentional Waste of the Water System Asset.**

22        8.1    The LISECC water system consists of a lake, a reservoir, a pump house with

23    filtration system, and water distribution pipes and valves.  There are 26,000 feet of pipes and

24    COMPLAINT FOR RICO VIOLATIONS,                    **Cleveland Stockmeyer PLLC**
      CORPORATE DISSOLUTION, DAMAGES                    8056 Sunnyside Ave. N.
      AND OTHER RELIEF  - 18                            Seattle, WA 98103
                                                        (206) 419-4385

1   most are transite, i.e., asbestos cement.  The system was originally laid or built by volunteers, in

2   the late 1960's and was built very poorly. The system has a peak 25-30% leakage rate, where

3   state law sets the maximum allowed rate at 10%.  In about 2010 some 20% of the distribution

4   system was replaced; the other 80% or some 20,800 feet of pipe has never been replaced.  This

5   80% reached the end of useful life by about 2000, is leaky and far beyond useful life, and needs

6   replacement and is imminent danger of collapse.  These components and others in the water

7   system requiring replacement today would cost some $6-8 million to replace.  In this complaint

8   the figure of $8 million is used as this is more prudent, given that water is essential to health and

9   habitation.

10   8.2    The present reserve fund is some $275,000. This is about $7.75 million short of

11   the $8 million needed.  The amount in reserves is some 3.4% or some 2-4% of the amount

12   needed.  Reserves for the water system are unfunded by some 96% or more.   LISECC has no

13   adequate reserves for replacing the water system components that are beyond useful life and

14   have been beyond useful life for about 14 years.

15   8.3    LISECC also has inadequate reserves for its recreational or other assets.

16   8.4    LISECC directors have a duty to preserve and not waste these assets, also a duty

17   to have reserves and assess users to pay for replacement.

18   8.5    Since 2011, defendants on the board have knowingly committed waste of the

19   water system asset by not replacing its components in any significant degree; not funding

20   reserves or creating a proper plan for proper reserves; and by allowing the system to continue to

21   deteriorate and waste away, through not making the needed capital replacements.   Each

22   defendant has known that 80% of the system pipes needs replacement, and a reserve fund of

23   some $8 million should be in place with the financial burden on water users according to use.

24   COMPLAINT FOR RICO VIOLATIONS,
CORPORATE DISSOLUTION, DAMAGES
AND OTHER RELIEF  - 19

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

1   Each has known reserves were vastly underfunded and were and are grossly inadequate.  Each

2   knows the system does not support fire hydrants and mains need replacing for that reason.  The

3   15% who are full time using 90% of the water, would be the principal contributors to paying for

4   asset replacement; each defendant has failed to assess charges for reserves and has failed to

5   replace assets because they seek to personally avoid the required cost and they seek for their

6   friends and relatives in the 15% group to avoid this cost.  This waste is illegal and also

7   oppressive and favoritism as the plan is to make all LISE owners pay for ongoing repairs instead

8   of charging water users proportional to their use, to make the needed capital replacements.

9        8.6    Each defendant's knowledge of the ongoing waste is actual knowledge.  On

10  information and belief, each defendant has actual knowledge of the following true statements or

11  their equivalent:

12       (a)    A September 12, 2000 memo from Jackie Grainger to the board concerning a

13  proposed State loan stated that "Standard life expectancy for asbestos concrete pipe, which is

14  installed in approximately 80% of the LISE system, is 40 years.  The remaining 20% consists of

15  steel pipe which has a similar life…There are other elements of the system that are aging also:

16  pressure reducing valves, shutoffs, etc."

17       (b)    An April 10, 2003 "Draft Position Paper for Water Distribution System

18  Replacement, sent to the Board, by Laura Mork, an engineer, board member and water chair,

19  stated that "The LISECC water system was constructed in phases during the 1960's" and that

20  "The only replacement in the 'transite' (asbestos cement) water distribution system have

21  been…when leaks occurred.  **The pipe has reached the end of its predicted life and could fail**

22  **at any time."**  (Emphasis added.) The memo then noted only 2,000 of some 23,000 feet of

23

24  COMPLAINT FOR RICO VIOLATIONS,          **Cleveland Stockmeyer PLLC**
    CORPORATE DISSOLUTION, DAMAGES              8056 Sunnyside Ave. N.
    AND OTHER RELIEF  - 20                         Seattle, WA 98103
                                                    (206) 419-4385

1    piping had been replaced by 2000 and if replacement was continued at that rate would take 131

2    years to replace the entire water distribution system.

3    (c)    A Summer 2003 Newsletter column by president Bob Bowman, stated that "Our

4    distribution system, the antiquated and now inadequate pipes that bring water to our lots, is

5    nearly forty years old and breaks and repairs are a weekly problem."

6    (d)    The Winter 2003 Newsletter reported a Water Committee Report by Mork stating:

7    "As you know from the April 2003 AGM and previous newsletter articles, we are **very**

8    **concerned about the condition of the water distribution system. It is falling apart**. . . **this**

9    **problem will continue to worsen until we replace the pipes**…(in past) we have repaired leaks

10   when they occur…we have attacked the symptoms (leaks) without touching the cause (failing

11   system).   . . . we push the ever-increasing costs into the future. . . . Since the rate that the

12   distribution system is being replaced is slower than the rate of failure, **the cost to repair leaks**

13   **will continue to increase**…(and) we trade short term…(dues) stability for a larger future

14   unknown." (Emphases added.)

15   (e)    A Spring 2007 Newsletter Water Report by President Mark Buford, Engineer and

16   Deputy Director of the NorthWest Clear Air Agency in Skagit County, stated that "Our water

17   system is old and it seems to me that we have underinvested in maintenance and improvements.

18   Our goal (it seems to me) has been to spend as little as possible to keep it running…That

19   management philosophy works while equipment is new, but things are beginning to break. At

20   some point we will start losing components faster than we can afford to repair them. The

21   problem is that for decades we didn't save money for the inevitable moment when our water

22   system started to need replacement. The dues were barely enough (to cover) operations, and

23   weren't sufficient to build up necessary capital reserves."

24   COMPLAINT FOR RICO VIOLATIONS,                **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES                8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 21                        Seattle, WA 98103
                                                   (206) 419-4385

(f)      A March 28, 2009 reserve study by Mork, Martha Patterson and others, states **the water system has a replacement value of $8.8 million**, $8 million of which is the distribution system.  The study identified another $600,000 in maintenance, administration, and recreational facility assets.  The study showed a total of $9.5 million in assets, most fully depreciated -- that is requiring replacement -- with less than $300,000 in reserves (3.1% funding).

(g)      The Spring 2009 Newsletter Water System Report by John Graham (LISECC Water Plant Superintendent) said that he used management software and "put in every valve, pump, meter, etc." also "when it was purchased, its expected life, cost, etc.  I can then see **we need to replace everything yesterday**."  (Emphasis added.)  He then wrote, "That is correct. We have over 400 items we call assets in the system, and most of them are underground.  The way we have done in the past is when something breaks we go fix it.  That's not much of an operations management schedule."

(h)      In the Spring 2010 Newsletter President Boulton stated that "A 2009 asset update suggests that **reserves amount to less than 2.4% of our assets**.  [Emphasis added.] Under today's laws this requires that LISECC reveal to all future members the risks inherent in having to pay for unforeseen assessments to cover the replacement of unreserved assets.  For example, we expect that our remaining water mains will need replacement within the next 10 years. LISECC currently has no reserves for such replacements."

(i)      In the Spring 2011 Newsletter Boulton stated that "LISECC has been operating with deficits for so many years that its retained earnings were a negative $159,878.53 in March 2008.  That was nearly equal to the total reserves that are being held for the replacement of LISECC assets in the future.  This points out that our annual dues only cover our annual costs of operation, without any depreciation or reserves to pay for future capital expenditures."

COMPLAINT FOR RICO VIOLATIONS,
CORPORATE DISSOLUTION, DAMAGES
AND OTHER RELIEF  - 22

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

8.7     Since 2011 each defendant has known of the state of reserves and the system as described in the above quotes including the truth of the statements that $8 million is needed to replace pipes, that the system is falling apart and is in danger of collapse.

8.8     Each has known the water system asset was and is wasting away, and by not replacing components or creating, building and using reserves, each committed waste and a risk of collapse of the system, or at best ever-increasing repair bills which at some point will skyrocket. The purpose and plan in this waste is to keep taking money mainly from the 85% to benefit the 15% for ever increasing repair bills.

8.9     Since 2009 standards affecting replacement of pipe have been increased, and there has been inflation in the price of plastic pipe so the $8 million pipes replacement figure could be prudently adjusted to nearly $9 million.

8.10    On May 15, 2011 Sexton, Paul Dempsey, Moench, Swanson, voted to end an annual reserve accumulation plan earmarked for the water system.

8.11    From 2012 through 2014 the general reserve fund grew from about $242,400 to $277,500.  This $35,100 net increase is grossly inadequate where reserves should be $8 million just to replace the water assets already past useful life.  Defendants on the board in this period were Sexton, Cash, Leslie Dempsey, Swanson, Bain, Slater and Lott, and each participated in this.

8.12    The 2015 budget was approved by certain defendants at the 2014 general meeting. For  2015, LISECC has planned for a net reserve contribution of less than $20,000.  This is also grossly and patently inadequate, as each defendant knows. Defendants on the board approving the 2015 budget were Sexton, Cash, Bain, Nielsen, Slater, Lott and Swanson.

8.13    Each defendant in the period 2011-2014 supported the actions to deplete reserves

COMPLAINT FOR RICO VIOLATIONS,
CORPORATE DISSOLUTION, DAMAGES
AND OTHER RELIEF  - 23

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

1    and or keep reserves at grossly inadequate levels. This is intentional waste of the well-beyond-

2    useful-life 80% of the pipes. Each defendant is committing this waste for personal gain and to

3    benefit the 15% at the expense of the 85% who pay for repairs bills through dues going to

4    operating cost and will pay more and more in the future. This is illegal, oppressive, unfair and

5    self interested and is favoritism to the 15% full timer group at the expense of the 85% who are

6    not full time residents.

7    **G.    Defendants Depleted, Wasted and Misapplied Reserves in 2011-2012**

8        9.1    In early 2011 there was some $141,000 in a special water system reserve fund

9    apart from other reserves. This special fund was required by the State loan and bylaws. In early

10   2011, the board depleted this entire special reserve fund account and ended the program

11   establishing it. The sums taken from reserves included $30,000 shifted to bound lot dues

12   refunds, and all or nearly all the remaining amounts taken from the $141,000 fund were used for

13   general operations mainly benefitting the 15% full time residents in LISE.

14       9.2    On April 3 and 9, 2011 the Board took $41,377.56 from reserves to balance the

15   previous year's budgetary operating loss. Defendants Sexton, Paul and Leslie Dempsey,

16   Swanson, supported the board action on April 3, 2011; Sexton, Paul and Leslie Dempsey,

17   Swanson, and Moench supported the board action on April 9, 2011.

18       9.3    On October 2, 2011 the board approved taking about $30,000 out of reserves to

19   refund dues paid by owners of "bound lots." Sexton, Leslie Dempsey, Moench, and Swanson

20   supported this. On December 4, 2011 Sexton, Leslie Dempsey, and Moench approved board

21   action to implement this. This was taking money from reserves for direct financial gain to

22   defendants who are owners of bound lots.

23       9.4    In November 2011 Sexton on information and belief took some $31,000 out of the

24   COMPLAINT FOR RICO VIOLATIONS,                    **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES                    8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 24                            Seattle, WA 98103
                                                       (206) 419-4385

1    reserve fund and put it to operations.

2    9.5    In a November 9, 2013 budget meeting, and then again later in a vote approving

3    the budget, defendants Sexton, Leslie Dempsey, Cash, Lott, Nielsen, Slater, and Bain, approved

4    taking some $20,000 out of reserves for LISECC legal fees knowing this was improper since

5    ongoing legal fees are not part of replacing or repairing capital assets which is the purpose of

6    reserves.

7    9.6    The actions in taking money out of reserve funds described above were waste as

8    the moneys were needed for reserves.  Most of the funds in the reserve funds were provided by

9    the 85%, but what was removed benefitted the 15%.  These actions taking money from reserve

10   funds were illegal, oppressive and self-interested and were favoritism.

11   **H.    Defendants Have Made Misleading and False Statements About Reserves.**

12   10.1    Each defendant has knowingly and intentionally made or caused or by omission

13   has ratified false and misleading statements about reserves to deceive LISE owners into

14   continuing to pay dues and other charges which are being used mainly to benefit the 15%

15   including defendants.

16   10.2    At the April 3 and April 9, 2011 Board and general meetings Sexton stated that

17   the reserve contribution for the water system constituted an "illegal assessment."  He then led the

18   board action to end it.  The statement it was an illegal assessment was not true.  Sexton knew this

19   was untrue.  Sexton had said in the 2009 Annual General Meeting on April 11, 2009 that the

20   reserve fee "is not a special assessment but a fee for a service."  Defendants Paul and Leslie

21   Dempsey, Moench, Swanson, were on the board at this time yet did not correct the false

22   statement they knew to be false.  Sexton stated at the April 3 and April 9, 2011 Board and

23   Annual General Meetings that there were no board resolutions or motions earmarking a $25

24   COMPLAINT FOR RICO VIOLATIONS,                    **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES                    8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 25                            Seattle, WA 98103
                                                        (206) 419-4385

1    "water connection fee" for reserves.  This was false and he knew it as the resolution had been

2    made part of bylaws (as 5.4.2.8 and 5.4.2.9).  Defendants Paul Dempsey, Moench, Swanson,

3    were on the board at this time yet did not correct the false statement they knew to be false.

4        10.3    On February 24 and March 17, 2013 Sexton, Cash, Moench and Nielsen stated

5    they were not sure what LISECC funds are reserves and voted to have the community vote on

6    what amount should be called reserves. In the Spring 2013 Newsletter Sexton stated "accounting

7    and documentation has been so lax in the past that we can't absolutely say what funds were

8    meant for reserves." The above quoted statements were publicized to members and were known

9    to be false by defendants on the board; they knew what funds were reserved in reserves; they

10   intended to deceive LISE owners into continuing to pay dues, and to conceal defendant's

11   unlawful actions concerning reserves.

12       10.4    Starting in 2013, each defendant on the board has participated in misleading LISE

13   owners about LISECC reserves, including through the mail and electronic media, in a more

14   fundamental and outrageous way by claiming falsely that LISECC's reserves are well funded, or

15   80-88% funded, when each defendant knows this is a huge lie.

16       10.5    Defendants know that 80% of the pipe system costing some $8 million  to replace

17   is 96% unfunded in reserves.  Defendants know that reserves are only 2-4% funded considering

18   actual replacement needs.

19       10.6    Defendants Sexton, Moench, Nielsen, Swanson, Cash, Bain, Slater, and Lott were

20   on the board since 2013 and each falsely made or ratified or caused or allowed such statements

21   to be made or allowed their publication including via the mails and website or at a minimum

22   failed to object or speak up although they knew they were false and had a duty to inform

23   members.  Each has knowledge indicating to them that claims reserves are well funded, are gross

24   COMPLAINT FOR RICO VIOLATIONS,                    **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES                    8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 26                            Seattle, WA 98103
                                                       (206) 419-4385

1    and outrageous fabrications and falsehoods.  Their joint plan and intent is to deceive LISE

2    owners to keep them paying dues and other charges, which mainly benefit defendants and the

3    15%, to avoid revealing true reserves needs would cause LISE owners to dissolve LISECC and

4    stop paying the unlawful dues and other charges not proportioned to use.  The ever-growing

5    mountain of deferred replacement costs, while there is ongoing unlawful extractions of moneys

6    from the 85%, is like a Ponzi scheme in part in that the fact it will inevitably collapse must be

7    concealed to keep the scheme going as long as possible.

8           10.7    The particular misstatements of fact about reserves since 2013 are as follows:

9           (a)    At the April 13, 2013 AGM Moench stated that a "preliminary report" of a

10   reserve study being done (discussed below) "indicated that LISECC is currently 88% funded,

11   this is considered exceptional."  At this time defendants on the board included Sexton, Cash,

12   Nielsen, Bain, Moench, and each knew the statements that LISECC reserves were 88% of

13   reserves were exceptional were false and did not correct it, or approved dissemination of this

14   statement on the LISECC website.

15          (b)    In the Fall 2013 Newsletter Nielsen stated "RCW 64.38.070 requires that

16   community associations have a reserve analysis to help maintain the financial well being of the

17   organization.  Everyone realizes the fundamental importance of a reserve.  It is literally the

18   'rainy day' fund. . . .The analysis evaluates all of the components of our community . . . as to

19   replacement cost and lifespan.  A timeline is created for the progressive replacement of each

20   component.  Then the available funds are projected into the future…Finally, it is possible to

21   calculate the annual contribution necessary to keep the reserve solvent.  With the judicial use of

22   the funds, the reserve will not drop below a critical level, will grow, and in the end prevent the

23   need for assessments.  That makes the organization a much more stable financial institution."

24   COMPLAINT FOR RICO VIOLATIONS,                    **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES                    8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 27                            Seattle, WA 98103
                                                       (206) 419-4385

1  Those statements are accurate and describe legal requirements applicable to LISECC. The next

2  statement was false and concealed that defendants are violating those same legal requirements:

3  "**The good news is that our reserve is 80% funded.**  That is considered a very good position

4  when compared to similar communities…" (Emphasis added.)  At this time Sexton, Cash,

5  Nielsen, Bain, Slater and Lott were on the board and each knew Nielsen's statement was false

6  and fraudulent, and each made the statement or did not contradict it or allowed it to be published

7  in the newsletter then electronically.

8       (c)     In the Fall 2013 Newsletter Sexton stated that a reserve study showed reserves

9  were "well-funded." This was untrue, and he knew it.  At this time defendants on the board

10  included Sexton, Cash, Nielsen, Bain, Slater and Lott.  Each of these knew Sexton's statement

11  was false and fraudulent, and each did not contradict it or allowed it to be published in the

12  newsletter then electronically.

13       (d)     At the July 13, 2014 board meeting President Nielsen stated that, "a reserve goal

14  of $335,000 is considered fully funded for LISECC.  In 2013 we were evaluated as 80% funded

15  and assuming that the 2015 budget is approved we will be near 87% funded at the end of the

16  year."  At the August 2014 annual meeting Nielsen stated that "reserve funds appear to be in

17  healthy shape at 80% funded, provided that LISECC continues to make contributions in a timely

18  fashion." In the Summer 2014 newsletter Nielsen stated "we have clarified our reserve position

19  and were informed that we are operating at 80% funded level (a particularly strong position for a

20  small community)"; that a 2013 reserve study "showed that we were 80% funded, which they felt

21  was very good.  We are now 82% funded, and at the completion of the 2015 budget cycle we are

22  projecting an increase to 87% of our funding goal."  The July 2014 Board Meeting and August

23  2014 Annual Meeting Minutes containing these statements were placed on the LISECC website.

24  COMPLAINT FOR RICO VIOLATIONS,               **Cleveland Stockmeyer PLLC**
CORPORATE DISSOLUTION, DAMAGES                  8056 Sunnyside Ave. N.
AND OTHER RELIEF  - 28                          Seattle, WA 98103
                                                (206) 419-4385

1    These statements in newsletters were sent out through the mail and posted on the site. These

2    statements were false.  At the time, defendants on the board were Nielsen plus Sexton, Cash,

3    Bain, Slater, Lott and Swanson, and each made the false statement or allowed and approved its

4    publication on via mail or on the website.

5         10.8    From July 2013 through 2014, defendants Sexton, Cash, Nielsen, Bain, Lott,

6    Slater, Leslie Dempsey and Swanson (as of December 2013), were on the board and in the

7    relevant time each allowed or caused or ratified publication of the above quoted statements about

8    reserves, while knowing them to be false and misleading.

9         10.9    Each defendant has known at all times since 2011 that the system was 80%

10    beyond useful life by 2000, and replacing this 80% would cost some $8 million, knew the peak

11    leakage rate was some 25-30% signaling potential imminent collapse; and that actual reserves

12    were grossly inadequate, and reserves were not 80 or 88% funded but are  less than 4% funded.

13    If any claims unawareness of the above documents and claims ignorance, then they are culpable

14    for failure to obtain the required knowledge.

15         10.10   Each defendant has read the 2013 reserve study LISECC obtained entitled

16    "Lummi Island Scenic Estates Full Reserve Study – May, 2013."

17         10.11   Each defendant knows this study is not a full and proper reserve study that

18    considers all components, their useful life and cost of replacing same.

19         10.12   The study's executive summary on page 4 states that the LISECC funding status

20    is "Well Funded" with reserves 80% funded; it states that the fully funded balance is $335,443.

21         10.13   The study states at page 6 that "The Fully Funded Balance is neither the present

22    replacement cost of all of the Association's reserve components, nor does it have a mathematical

23    relationship to the recommended reserve contribution funding plans."

24    COMPLAINT FOR RICO VIOLATIONS,       **Cleveland Stockmeyer PLLC**
CORPORATE DISSOLUTION, DAMAGES       8056 Sunnyside Ave. N.
AND OTHER RELIEF  - 29       Seattle, WA 98103
       (206) 419-4385

10.14   Each defendant read this and understood it correctly to mean that the study is not a proper reserve study for all LISECC assets that need replacement.

10.15   The study does not include replacement cost of the LISECC water system components that are beyond useful life and which need replacement today.

10.16   Each defendant has read the study, knows this, and knows telling LISE owners the study shows reserves are well funded or are 80 or 88% funded, is a gross falsehood because the study itself says it does not include present replacement cost of all components.

10.17   The study also states that in the latter 15 of 30 years, "Required Special Assessments" totaling some $2,640,000 will be needed including in the final year over one million dollars.  The spread sheet in the study indicates some $321,000 in spending on assets is needed in the first fifteen years then over $3 million in the second fifteen years.  Each defendant read this and understood it to mean that reserves are not well funded or 80% funded even only considering the limited scope of assets included in the study.

10.18   Knowing of the limited scope of the reserve study and its other flaws or qualifications each defendants has publicized the 80% funded figure improperly as if were about the replacement cost of the water system assets that are beyond useful life, failing to adequately inform members of the limitations of the study.

10.19   Each defendant knew and knows that current projections and plans for LISECC are likely to lead to catastrophic failure of the system, because reserves are only 4%, the pipes are too old and needed replacement some 14 years ago; the leakage rate is illegal, unlawful and growing; and even the limited-scope study shows reserves are short by millions of dollars because special assessments of millions of dollars will be required in the latter fifteen years.   By telling members through the mails and wires that reserves are well funded or 80 or 88% funded

COMPLAINT FOR RICO VIOLATIONS,
CORPORATE DISSOLUTION, DAMAGES
AND OTHER RELIEF  - 30

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

1  defendants seek to deceive owners by concealing real replacement and reserve needs to keep the

2  ongoing financial extractions going, which benefit defendants.

3      10.20   Each defendant is acting in concert to operating LISECC so that the water system

4  does fail but before it does, defendants each plan to financially benefit for as many years as

5  possible by illegally collecting dues and other charges from LISE owners before the system and

6  the defendants' scheme crashes.

7      10.21   Each defendant has read the pages that are part of this study that defendants hid

8  from members.

9      10.22   The part of the study hidden by defendants from members states in part:  "**Water**

10 **mains.  Need a plan for regular replacement.**"  Also it states "8,000 feet were replaced three

11 years ago.  [This refers to the 20% replacement in about 2011] **At this time there is no plan to**

12 **make any further replacements of the mains**."  (Emphases added.)

13     10.23   Each defendant knew of these statements and knew they are true and actively

14 supporting keeping this part of the study work secret to mislead members.

15     10.24   On information and belief, each defendant acted in concert and actively

16 coordinated the decision to keep this part secret and to publicize the statements identified above

17 about reserves, conspiring to deceive LISE owners into continuing to pay dues and other charges

18 before the system fails.

19     10.25   Defendants are operating LISECC to extract money from other people to avoid

20 their own reserve liability as heavy users of water, also that of the 15%, and to make non users

21 pay costs of the ever increasing need for repairs, while deliberately wasting the water system

22 asset, and running the near certain risk of a collapse of the system financially or functionally.

23 This is illegal, oppressive, self interested and favoritism to the 15%.

24 COMPLAINT FOR RICO VIOLATIONS,                **Cleveland Stockmeyer PLLC**
   CORPORATE DISSOLUTION, DAMAGES                8056 Sunnyside Ave. N.
   AND OTHER RELIEF  - 31                        Seattle, WA 98103
                                                 (206) 419-4385

10.26    In 2014, LISECC failed to provide an annual update to their reserve study as required under RCW 64.38.065.3.  This was to further the joint plan to hide the state of reserves needed and defendants' ongoing waste of the water system.

I.    **Defendants Waste Labor Costs & Plan to Waste More Labor Costs**

11.1    Since 2011 each defendant has committed waste in supporting budgets and other actions requiring or allowing LISECC to have excess labor costs.

11.2    The water system has 60 full-time users and 215 hookups the vast majority of which are only used part time.  There are only a few hundred dues paying members.  This operation could be run with one regular part time employee calling on outside help or contractors as needed for repairs.

11.3    Since 2011, defendants have operated LISECC to have three full time employees (30 hours a week) with benefits (maintenance superintendent, one maintenance worker, and one secretary).  This is waste.

11.4    On September 22, 2013, and March 16, July 13, August 23, and September 21, 2014, the defendants on the board approved a 2015 budget calling for a fourth employee to be called a "General Manager."  The purpose of this employee is to do the president's admin work, i.e., work that should be done by the current president Sexton as part of his volunteer duties. The fourth employee for a system of just a few hundred water users is intentional waste. This will increase the financial burden by some $35,000 a year plus benefits costs.  This is also a personal gain to Sexton of some $35,000 a year, as he seeks to be relieved of admin work which should be done on a volunteer basis.

11.5    Having three or four employees for the LISECC water system serving just 60 full time water users and some 215 water users overall, is intentional waste.

COMPLAINT FOR RICO VIOLATIONS,
CORPORATE DISSOLUTION, DAMAGES
AND OTHER RELIEF  - 32

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

11.6    The excess labor cost since 2011 has been some $392,000 most of which is born unfairly by the 85% who are not full time residents.

**J.    Defendants' Wrongdoing Depresses Real Estate Values**

12.1    Since 2011 on information and belief several lots in LISE sold for prices under $5,000.  Recently LISECC could not sell lots it had taken for years and some were sold for a few thousand dollars each.

12.2    On or about November 21, 2014, a LISE lot sold for a price of $3700.  The same lot sold some ten years ago for $16,000.  This is the lot at 1068 Dana Circle.

12.3    On January 17, 2014 an LISE lot was "sold" for a price of zero dollars and zero cents.  The seller was Donald and Beverly Glick who were tired of paying dues after Lott told them the $700 a year dues would continue forever.  The buyer was Lott, who assigned the lot to others for an unknown price.  Lott at this time knew collecting dues was illegal and her statement of high dues forever, was oppressive and self interested and intended to cause the sale.

12.4    In July 2014 owner Helen Little called LISECC's Corporate Secretary Penni Idol to complain about onerous dues and that she had been liened though less than 60 days late.  LISECC also had added attorneys fees to the lien.  Idol told Little to sell fast, before foreclosure.  Defendant Swanson, a real estate agent and board member, listed the property for $20,000, and presented an offer for $10,000 from Leslie Dempsey (then Treasurer) and removed the property from the market without Little's consent. He gave her an updated offer for $12,500. These acts pressured Little to accept this low price, and she netted some $8,148, from this property she got from her parents who had gotten it in 1966 for $6,000.  Over 48 years the appreciation was depressed by defendant's scheme and in this case defendants Swanson and the Dempseys benefitted personally.

COMPLAINT FOR RICO VIOLATIONS,
CORPORATE DISSOLUTION, DAMAGES
AND OTHER RELIEF  - 33

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

12.5   The wrongful acts committed by defendants described herein are depressing real estate prices in LISE substantially.  Recent prices such as $0.00 to $5,000 even $12,500 for a lot, are far below true and proper market value were the wrongful acts not being committed.

12.6   Defendants know their actions are depressing real estate values.  On information and belief, other defendants have obtained lots at below market prices after operating LISECC to put LISE owners in arrears of dues then having the lot liened or foreclosed.

**K.   Defendants Illegally Retaliate Against Those Who Protest**

13.6   In January-March 2011 Sexton, Paul and Leslie Dempsey, Swanson, and Moench acted in concert and conspired to illegally remove then President Boulton and Board Member Ortego, because they had opposed some of the wrongful acts described herein.  Said defendants tried to use a single ballot for removal of both, at a special meeting in March 2011.  Using a single ballot was improper and using a special meeting for this purpose was improper under the bylaws. The bylaws require any removal of a board member to be at an Annual Meeting.  Said defendants knew these methods were illegal and improper and pursued them until Ortego, Boulton and corporate counsel spoke up to stop the illegal attempted removal.  Without this opposition, said defendants would have carried out the illegal attempt.  Thereafter, said defendants promised Ortego and Boulton they would wind up LISSEC and on this basis obtained Ortego's and Boulton's stepping down from the board.  Then said defendants broke their commitment and did not wind up LISECC.  This was to retaliate against Ortego, and Boulton, for protesting some the unlawful acts challenged herein.

13.7   On June 24, 2012 in a board meeting, Sexton, Cash, Bain, and Moench, approved cutting off Ortego's household water to retaliate against him for his advocacy against the ongoing illegal acts described herein.  At this time his water charges were prepaid and he owed

COMPLAINT FOR RICO VIOLATIONS,
CORPORATE DISSOLUTION, DAMAGES
AND OTHER RELIEF  - 34

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

1   nothing to LISECC and there was no basis for cutting off his water.  Said defendants also caused

2   LISECC to not give him proper notice.

3          13.8     At this time they knew Ortego and his wife were full time residents on the lots in

4   LISE owned by Ortego his wife Anna Ponomareva and a trust. The cut off of water caused

5   Ortego and Ponomareva to suffer great difficulty and severe emotional distress, and economic

6   loss. This included (a) causing Ortego to spend hours and dollars building a household rain

7   collection and water system using rainwater, groundwater, and run-off; (b) causing him or his

8   spouse to spend hours and dollars in making many runs off Island for water; and (c) making

9   daily life stressful, less healthy, and greatly more inconvenient.  Defendants knew these effects

10  would take place and maliciously intended them.  Each defendant acting, that is, Sexton, Cash,

11  Bain, and Moench, intended Ortego and his spouse to suffer severe emotional distress.  The

12  severe emotional distress and harms were increased when Ortego's spouse Ponomareva became

13  pregnant and again increased when she gave birth in 2014, adding an infant child to the home at

14  which defendants have cut off water from the LISECC system.  Defendants on the board today,

15  that is, Sexton, Lott, Slater, Swanson, Cash and also Bain and Nielsen through August 2014,

16  knew of the cut off and the increased severe emotional distress of Ortego and Ponomareva and

17  their infant, but have maintained the cut off, intending to cause more and enhanced severe

18  emotional distress to Ortego, Ponomareva and their family.  They also approved liening the three

19  lots.

20         13.9     These acts are illegal, oppressive, unfair and self interested, as the point is to

21  make an example out of Ortego to show LISE owners opposition to the ongoing illegal scheme is

22  not tolerated.  Ortego was targeted because he continued to lead opposition efforts after stepping

23  down from the board.  The point was to show anyone public opposition will be dealt with harshly

24  COMPLAINT FOR RICO VIOLATIONS,              **Cleveland Stockmeyer PLLC**
    CORPORATE DISSOLUTION, DAMAGES            8056 Sunnyside Ave. N.
    AND OTHER RELIEF  - 35                    Seattle, WA 98103
                                              (206) 419-4385

1   and even illegally, including with water cut off.

2        13.10   On July 29, 2014, Ortego sought a member list from LISECC and defendants on

3   the board, Sexton, Lott, Slater, Swanson, Bain, Cash and Nielsen, on information and belief,

4   resolved or supported he should not get it.  This violated RCW 24.03.135 and 64.38.045

5   requiring the list be made available.  Said defendants are claiming that LISE owners are

6   members, but refusing to give this member (Ortego) the member list knowing he intends to use it

7   to contact other LISE owners who may oppose defendant's ongoing racket to financially abuse

8   85% of LISE owners to benefit the 15% full time residents.

9                        **IV.    LEGAL CLAIMS**

10  A.    **Dissolution of LISECC**

11       14.1   All allegations of this complaint are incorporated under this section.

12       14.2   RCW 24.03.266 provides that the court may dissolve a Washington nonprofit

13  corporation such as LISECC if "fifty members or members holding at least five percent of the

14  voting power, whichever is less" or "one or more directors," show that "(b) The directors or

15  those in control of the corporation have acted, are acting, or will act in a manner that is illegal,

16  oppressive, or fraudulent" or if "(d) The corporate assets are being misapplied or wasted."

17       14.3   Five percent of the voting power in LISECC is five percent of 266, or 13.3.

18  Plaintiffs holding voting power in LISECC herein number 24.  It is expected more will seek to be

19  joined.

20       14.4   In 2011 Ortego was a director of LISECC who like then president Boulton

21  protested wrongful acts challenged herein in particular the ongoing collection of dues on a

22  mandatory basis. Swanson, and Paul and Leslie Dempsey promised Ortego and Boulton if they

23  stepped down from the board, they would ensure that the succeeding board would tell the

24  COMPLAINT FOR RICO VIOLATIONS,                    **Cleveland Stockmeyer PLLC**
    CORPORATE DISSOLUTION, DAMAGES                    8056 Sunnyside Ave. N.
    AND OTHER RELIEF  - 36                            Seattle, WA 98103
                                                      (206) 419-4385

1 members LISECC lacked authority to levy dues, disclose legal counsel recommended winding

2 up and dissolving LISECC, and seek a court appointed receiver to do that.  Trusting them,

3 Boulton and Ortego stepped down.  Boulton has now passed away.  The succeeding board did

4 not carry out the promise though it included Leslie and Paul Dempsey, Sexton and Moench and

5 broke the promise to wind up LISSEC.  In equity the Court should count Ortego as a director

6 with standing to seek dissolution of LISECC under RCW 24.03.266.  The promise to step down

7 that was broken was in itself an illegal act, oppressive, self interested and favoritism to the 15%

8 full timer group as Sexton and others after getting Ortego off the board increased the wrongful

9 practices alleged herein.  The original plan was to falsely lead Ortego and Boulton to step down,

10 to continue and increase the wrongful scheme of operating LISECC to get dues unlawfully and

11 divert those monies to the defendants and the 15% full time group.

12      14.5      The acts and omissions described above in ¶¶ 1, 3.1 to 12.10, 12.4 constitute

13 waste and misapplication of LISECC assets and controlling LISECC in a manner that is illegal,

14 oppressive and fraudulent justifying dissolution of LISECC.

15      14.6.     Plaintiffs are entitled to a dissolution order, appointment of a receiver for that

16 purpose and their fees and costs.

17      14.7      There is no harm and there is much good in dissolution.  The water system is the

18 fundamental part of LISECC.  The water system should not go out of business but should be

19 transferred to a public utility under RCW Title 70, so that it becomes eligible for federal grants

20 or loans that are needed for asset replacement.  LISECC cannot get such aid as a private water

21 system.  Public water utilities also must be professionally managed. This will ensure charges or

22 assessments are properly based on use and are no longer done illegally or to favor a subgroup of

23 full time residents by harming everyone else.  Dissolution and putting the assets on a sounder

24 COMPLAINT FOR RICO VIOLATIONS,          **Cleveland Stockmeyer PLLC**
CORPORATE DISSOLUTION, DAMAGES            8056 Sunnyside Ave. N.
AND OTHER RELIEF  - 37                    Seattle, WA 98103
                                          (206) 419-4385

1    replacement schedule will support repayment of the State loan and ensure long term viability of

2    the system presently headed for collapse.

3    **B.      Breach HOA, Nonprofit and Fiduciary Duties, Negligence or Gross Negligence**

4            15.1    All allegations of this complaint are incorporated under this section.

5            15.2    RCW 24.03.127 provides for non-profit corporations that that "A director shall

6    perform the duties of a director, including the duties as a member of any committee of the board

7    upon which the director may serve, in good faith, in a manner such director believes to be in the

8    best interests of the corporation, and with such care, including reasonable inquiry, as an

9    ordinarily prudent person in a like position would use under similar circumstances." RCW

10   64.38.025(1) provides that a homeowner association director must "act in all instances on behalf

11   of the association.  In the performance of their duties, the officers and members of the board of

12   directors shall exercise the degree of care and loyalty required of an officer or director of a

13   corporation organized under chapter 24.03 RCW."  These duties apply to defendants.

14           15.3    Fiduciary duties also apply and include duties to not favor one group over

15   another, to treat members equally, which means to charge according to use for variable services

16   such as supplying water.  Defendants also had duties to follow the plat covenants requiring one

17   lot, one membership in charging dues, and bylaws requirements and original plat language

18   requiring mandatory membership and dues to end in 1990.  Defendants also had duties to learn,

19   to act in good faith and to not act self interestedly, in bad faith or to favor a subgroup of

20   members at the expense of the majority.  Bylaws Part 7:  Policy Statement #11 required directors

21   to act reasonably, follow established management practices.

22           15.4    Directors had duties to act for the interest of the whole, and were directed in a

23   letter that "Making decisions or taking actions that put the interests of yourself, your friends, or

24   COMPLAINT FOR RICO VIOLATIONS,                    **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES                       8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 38                                  Seattle, WA 98103
                                                               (206) 419-4385

1  your supporters above those of the association or its members is a breach of your fiduciary duty

2  to the association. . . If board members made decisions based on favoritism, discrimination, or

3  malice – or make arbitrary decisions – they're breaching their fiduciary duty."  Defendants had

4  duties to follow State law including *Fawn Lake* disallowing bound lots dues exemptions.

5       15.5    The acts and omissions described above in ¶¶ 1, 3.1 to 12.10, and 12.4 violated

6  said duties.  In committing said violations, defendants each were personally involved, and each

7  like LISECC did so intentionally, maliciously, in bad faith, dishonestly, and acting in concert.

8  The overall plan was to act not for the entirety of the LISE owner-members but to make

9  decisions and take actions that put the interests of defendants and their relatives, friends and

10 supporters in the 15% group of full timers using 90% of the water, above those of the other 85%

11 of the members.  This was "favoritism, discrimination and malice" and otherwise a breach of the

12 defendant directors' duties.

13      15.6    This caused and proximately caused harm to plaintiffs including wrongfully

14 extracted dues, other charges and other economic loss and emotional distress including severe

15 emotional distress on the part of Ortego and Ponomareva.

16      15.7    Defendants had a duty of care to plaintiffs to act as reasonable directors and to not

17 act negligently or with gross negligence.  Defendants breached those duties and acted with gross

18 negligence in the acts and omissions in ¶¶ 1, 3.1 to 12.10, and 12.4, proximately causing injury

19 and loss to plaintiffs, including for all amounts taken wrongfully from plaintiffs and also

20 including pain and suffering and emotional distress on the part of Ortego and Ponomareva.

21 **C.    Washington Consumer Protection Act Claims**

22      16.1    All allegations of this complaint are incorporated under this section.

23      16.2    The acts and omissions described above in ¶¶ 1, 3.1 to 12.10, 12.4 are unfair or

24 COMPLAINT FOR RICO VIOLATIONS,               **Cleveland Stockmeyer PLLC**
   CORPORATE DISSOLUTION, DAMAGES              8056 Sunnyside Ave. N.
   AND OTHER RELIEF  - 39                      Seattle, WA 98103
                                               (206) 419-4385

1    deceptive acts or practices in trade or commerce under RCW 19.86.020 having a public interest

2    impact and proximately causing injury to plaintiffs in their business or property.

3        16.3    LISECC is being run by defendants as a business, for benefit of defendants and

4    the 15% group. It sells goods such as water to many people. It conducts commerce including a

5    water system and services directly or indirectly affecting the people of the State of Washington.

6    In operating a water system classified as a "municipal water supplier" it is acting publicly and

7    affecting the public. The deceptive practices alleged herein were both intended to deceive or at a

8    minimum had the capacity to deceive a substantial portion of the public.

9        16.4    The above transactions are consumer transactions because LISECC markets to the

10   public and new owners buy land in LISE in part based on LISECC's relationship to lots in LISE.

11   The acts complained of herein were in the course of business of  LISECC, and are part of a

12   pattern and generalized course of conduct:  to run LISECC for defendant's personal benefit and

13   that of the 15% full time owners. Defendants and LISECC committed repeated acts of illegal

14   dues extraction and misuse for years then expanded this with dues increases in the last six years

15   also adding the $71 charge and other charges not based on water use. There is a real and

16   substantial potential for repetition of the conduct in the future, where certain defendants first

17   promised to stop, then broke that promise, then refunded themselves money paid for out of dues

18   taken illegally. Many consumers of water and others in LISE are likely to be affected as the

19   intent is to continue to base most charges on mere ownership of land in LISE, not use.

20       16.5    If the above transactions are deemed private, there is likelihood that additional

21   plaintiffs have been or will be injured in the same fashion affecting the public interest. All LISE

22   owners not in the 15% have been harmed, not just plaintiffs herein. LISECC advertises its

23   services to the public via its website. LISE owners are in an unequal bargaining position vis a

24   COMPLAINT FOR RICO VIOLATIONS,                    **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES                   8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 40                           Seattle, WA 98103
                                                      (206) 419-4385

1   vis LISECC and defendants; the dues of $660 a year plus other charges mean that no LISE

2   owner has a sufficient economic interest to stop the abuse, while LISECC garners hundreds of

3   thousands of dollars unlawfully every year funding lawyers who enforce the purported dues

4   obligation.

5       16.6    The injury to plaintiff's business or property includes all amounts of dues

6   collected from plaintiffs, or any money unlawfully charged to plaintiffs including any amounts

7   paying for water in excess of what would be charged according to use; plus us diminution in

8   value or enjoyment of plaintiff's lots or in the case of the Ortego- Ponomareva lots, diminution

9   in their use value due to water being cut off and or value of their efforts in building personal

10  water systems or getting water from stores.

11      16.7    Under RCW 19.86.090 plaintiffs are entitled to actual damages (plus an additional

12  amount based on trebling of actual damages not to exceed $25,000 each); fees and costs of suit.

13  **D.    Intentional or Reckless Infliction of Emotional Distress and Outrage**

14      17.1    All allegations of this complaint are incorporated under this section.

15      17.1    The conduct of Sexton, Cash, Bain, and Moench, Lott, Slater, Swanson, and

16  Nielsen described herein relating to cutting off water to the Ortego and Ponomareva lots and

17  home, was intentional, extreme and outrageous or if not intentional reckless.

18      17.2    Among other things the cut off of water was atrocious and utterly intolerable in

19  civilized society as it sought to endanger health and sanitation for Ortego and Ponomareva in

20  order to get Ortego to submit to the wrongdoing alleged herein, and no longer oppose it, and to

21  retaliate against him for leading efforts to oppose such wrongdoing.

22

23

24  COMPLAINT FOR RICO VIOLATIONS,              **Cleveland Stockmeyer PLLC**
    CORPORATE DISSOLUTION, DAMAGES               8056 Sunnyside Ave. N.
    AND OTHER RELIEF  - 41                         Seattle, WA 98103
                                                   (206) 419-4385

1    17.3    Such conduct proximately has caused Ortego and Ponomareva to suffer severe

2    emotional distress.  Being cut off from water and humiliated by the cut off and other retaliations

3    is severely emotionally distressing.

4    **E.    Unjust Enrichment and Disgorgement**

5    18.1    All allegations of this complaint are incorporated under this section.

6    18.2    Through the acts and omissions described above, individual defendants have been

7    unjustly enriched and are bound to disgorge to plaintiffs all amounts by which they have been

8    unjustly enriched obtained from plaintiffs.

9    **F.    RICO Claims**

10    19.1    All allegations of this complaint are incorporated under this section.

11    19.2    The Racketeer Influenced Corrupt Organizations (RICO) Act 18 USC § 1964(c)

12    provides that "Any person injured in his business or property by reason of a violation of section

13    1962 of this chapter may . . . recover threefold the damages he sustains and the cost of the suit,

14    including a reasonable attorney's fee . . . ."

15    19.3    18 USC 1962(c) proscribes a person from conducting the affairs of an enterprise

16    affecting interstate or foreign commerce through a pattern of racketeering activity and

17    racketeering activity includes of mail and wire fraud as defined below. 18 USC § 1962(d) makes

18    it a crime to conspire to commit any offense listed in §1962 by agreeing with a defendant who is

19    the operator or manager to conduct the affairs of the enterprise through a pattern of racketeering

20    activity.

21    19.4    The individual defendants here (not LISECC) have participated in the conduct of

22    an enterprise -- LISECC -- that affects interstate commerce, through a pattern of racketeering

23    activity (in the acts listed in ¶¶ 1, 3.1 to 12.10, 12.4 including false dues notices sent through the

24    COMPLAINT FOR RICO VIOLATIONS,        **Cleveland Stockmeyer PLLC**
CORPORATE DISSOLUTION, DAMAGES        8056 Sunnyside Ave. N.
AND OTHER RELIEF  - 42        Seattle, WA 98103
        (206) 419-4385

1    mails, false and misleading statements about dues being due sent through the mails or put on the

2    website, false statements about LISECC's dues authority being put in mails or on the website and

3    false statements being put in mails or on the website about LISECC's reserves) and this

4    racketeering activity and mail and wire fraud proximately caused injury to plaintiffs in their

5    business or property by inducing or causing them to pay to LISECC dues or other charges within

6    the last four years.

7         19.5    The LISECC enterprise has been since 2011, controlled through defendants'

8    memberships on the board and their acts such as inducing dissidents like Ortego and Boulton to

9    step down through false promises to wind up LISECC. They also control LISECC by keeping the

10   money coming in through the scheme.  The RICO enterprise is also the association in fact of

11   defendants who are related by blood, marriage or friendship and by being the active portion of

12   the 60 full time LISE residents and who function with the common purpose of collecting dues

13   illegally and other money, a de facto structure or organization including the board, and longevity

14   over years descried herein.  They work in concert on the board, and with each other, rarely

15   disagreeing.

16        19.6    The pattern of racketeering activity includes within the last ten years literally

17   thousands of acts of illegal dues collection facilitated by the misleading statements about dues

18   being owing sent through the mails and or by false statements about dues authority or reserves

19   sent through the mails or published on line.  The acts described herein were all intended to keep

20   the dues money flowing to LISECC and are related that way: dues money is the major portion of

21   LISECC revenue.  They are related by the plan to shift water costs from the 15% full time group

22   including most defendants onto the 85% non full time group.  The activity has been continuous

23   at least since 2011 (when Sexton and other defendants stopped reform efforts by fraudulently

24   COMPLAINT FOR RICO VIOLATIONS,       **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES       8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 43       Seattle, WA 98103
            (206) 419-4385

1  getting Ortego and Boulton off the board, ending that effort to get LISECC to wind up, that is,

2  cease illegal collection of dues).  There is a threat that the activity will continue --defendants are

3  engaged in increasing dues collections, increasing the illegal diversions of money benefitting the

4  15%, and innovating deceptions about dues authority and adequate reserves, to keep the dues

5  money flowing and the racketeering scheme profitable for them and their associates.

6      19.7    The enterprises identified above affect "interstate commerce" as LISECC deals

7  across many State lines and into Canada in disseminating its fraudulent statements and obtaining

8  dues and other income.  A significant portion of dues income is from other States or Canada.

9  LISECC publishes its newsletter and sends its dues bills to many states, and Canada.

10     19.8    Each defendant conspired to violate § 1962(c) and knowingly agreed to facilitate

11  the scheme to operate the enterprise through a pattern of racketeering activity and taking

12  concrete overt steps to further such scheme.

13     19.9    The racketeering activity includes hundreds of acts of mail fraud and wire fraud.

14  18 U.S. Code § 1341 "Frauds and swindles" provides that it is a federal crime if "Whoever,

15  having devised or intending to devise any scheme or artifice to defraud, or for obtaining money

16  or property by means of false or fraudulent pretenses, representations, or promises, . . . for the

17  purpose of executing such scheme or artifice or attempting so to do, places in any post office or

18  authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the

19  Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or

20  delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such

21  matter or thing, or knowingly causes to be delivered by mail or such carrier according to the

22  direction thereon, or at the place at which it is directed to be delivered by the person to whom it

23  is addressed, any such matter or thing." 18 USC § 1343, "Fraud by wire, radio or television"

24  COMPLAINT FOR RICO VIOLATIONS,          **Cleveland Stockmeyer PLLC**
    CORPORATE DISSOLUTION, DAMAGES          8056 Sunnyside Ave. N.
    AND OTHER RELIEF  - 44                  Seattle, WA 98103
                                            (206) 419-4385

1  provides: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or

2  for obtaining money or property by means of false or fraudulent pretenses, representations, or

3  promises, transmits or causes to be transmitted by means of wire, radio, or television

4  communication in interstate or foreign commerce, any writings signs, signals, pictures, or sounds

5  for the purpose of executing such scheme or artifice,"

6  has committed a federal crime."

7       19.10   Individual defendants here devised or formed a scheme to defraud and have used

8  the mails and wires in furtherance of that scheme, as aforesaid, including sending dues and

9  newsletters with false claims of dues authority or that dues are due, collecting money, using the

10  website.  Each defendant had the specific intent to defraud and cause pecuniary loss to each

11  plaintiff.   The scheme to falsely claim dues and obtain other moneys by false statements about

12  reserves was reasonably calculated to deceive persons of ordinary prudence and comprehension

13  and overcome any doubts any LISE owner may have had about whether dues were really due.

14  The specific misrepresentations of each defendant, or which each supported, are identified above

15  and include multiple acts while on the board, approving sending out dues notices when dues are

16  not due, statements LISECC has authority to collect dues, and statements that reserves are well

17  funded or are 80 to 88% funded.  Each defendant agreed to and helped commit mail fraud in the

18  aforementioned acts in which extensive use was made of the U.S. mails and electronic website

19  for sending dues bills under false and fraudulent pretenses, sending false statements about dues

20  authority, sending false statements about reserves being well funded and 80 to 88% funded.

21  Each agreed to commit and helped commit wire fraud in supporting and causing the continual

22  publication via the website and internet of newsletters and false statements about dues, dues

23  authority, and reserves cited above.  Defendants also collected vast amounts obtained deceptively

24  COMPLAINT FOR RICO VIOLATIONS,              **Cleveland Stockmeyer PLLC**
   CORPORATE DISSOLUTION, DAMAGES              8056 Sunnyside Ave. N.
   AND OTHER RELIEF  - 45                      Seattle, WA 98103
                                               (206) 419-4385

1    through the mails or wires.  LISECC operates to a great extent in its relations with members

2    through the mails and wires and LISECC is continuously mailing and transmitting writings, for

3    the purpose of executing its scheme or artifice to defraud.

4        19.11   Plaintiffs reasonably relied on the dues statements saying dues are due, or

5    statements by LISECC that said it has dues authority, or statements about its reserves that were

6    false, and each has been injured in their property or business by such pattern of racketeering

7    activity and or mail fraud, or wire fraud, by paying dues not due or other charges.  Each is

8    entitled to RICO triple damages, plus injunctive relief.   Each plaintiff has paid dues in the last

9    six years and or other charges and their RICO damages include all amounts paid as dues, and all

10   amounts paid in other charges in excess of fair charge for water use proportional to use.

11   Ortego's and Ponomareva RICO damages also include the injury or diminution in use value of

12   their lots and home occasioned by defendant's use of mails and wires to claim they owed dues

13   setting it up to cut off their water for alleged nonpayment of dues.  Any plaintiff who was liened

14   for not paying dues has that injury to property as well.

15       **G.    Conspiracy and Acting in Concert**

16       20.1    All allegations of this complaint are incorporated under this section.

17       10.2    All claims against individual defendants are asserted jointly and severally as they

18   have acted in concert or jointly and or have conspired to commit the wrongs alleged herein

19   (except that tort or other claims by Ortego and Ponomareva relating to cutting off Ortego's and

20   Ponomareva's water against defendants Sexton, Cash, Bain, Swanson and Moench, Lott, Slater, ,

21   and Nielsen are alleged jointly and severally against those defendants only).  Each individual

22   defendant combined to accomplish an unlawful purpose, or to accomplish a lawful purpose by

23   unlawful means; and entered into an agreement to accomplish the conspiracy.  Each conspired

24   COMPLAINT FOR RICO VIOLATIONS,              **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES                8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 46                            Seattle, WA 98103
                                                          (206) 419-4385

1    with respect to using LISECC to make LISE owners pay dues and other charges, and Sexton,

2    Cash, Bain, Swanson and Moench conspired to commit the tort of intentional infliction of

3    emotional distress against Ortego and Ponomareva.

4        20.3    Each defendant conspired to conduct the racketeering activity through intending

5    to further the racketeering endeavor, mail fraud and wire fraud, agreeing to a scheme in violation

6    of the RICO statute and each has committed or participated in at least two predicate acts of mail

7    or wire fraud.  They each have agreed to the corrupt use of LISECC to gain money from the 85%

8    and many LISE owners including plaintiffs, knowing the other individual defendants agree and

9    knowing the dues authority claimed did not exist.

10

11

12                            **PRAYER FOR RELIEF**

13        1.      For a judgment in an amount for damages to be proven at the time of trial;

14        2.      For an order and judgment awarding costs and attorney fees incurred herein,

15        3.      For all trebling of damages allowed under RICO or the Washington CPA;

16        4.      For an order and judgment dissolving LISECC and providing whatever

17    supplementary relief is deemed advisable for orderly winding up, such as appointment of a

18    receiver with power to sell or transfer the water system to a public utility entity;

19        5.      For injunctions and declarations that the wrongful acts described herein are

20    wrongful, and barring such acts in the future, and declarations that LISECC authority to collect

21    dues ended in 1990, LISECC no longer has any authority to collect dues or take any step to

22    enforce any claimed dues and ordering a stop to all such activity and enjoining same; and

23    ordering LISECC to inform LISE owners and state on its website that its claimed dues or

24    COMPLAINT FOR RICO VIOLATIONS,               **Cleveland Stockmeyer PLLC**
     CORPORATE DISSOLUTION, DAMAGES                8056 Sunnyside Ave. N.
     AND OTHER RELIEF  - 47                        Seattle, WA 98103
                                                   (206) 419-4385

1  membership authority over all LISE owners has ended and to execute and file in the recorder

2  office of Whatcom County a notice stating that the membership obligation in the original plats is

3  ended and that the 1990 Notice described herein is revoked or withdrawn; and

4        6.     For such other relief as the Court may deem just, equitable and proper.

5       DATED this 3rd day of December, 2014.

6                    CLEVELAND STOCKMEYER PLLC

7

8                 By:__/s/ Cleveland Stockmeyer_____
                   Cleveland Stockmeyer, WSBA #21636

9                     8056 Sunnyside Ave. N.
                   Seattle, Washington  98103

10                     (206) 419-4385
                   Attorney for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24  COMPLAINT FOR RICO VIOLATIONS,       **Cleveland Stockmeyer PLLC**
CORPORATE DISSOLUTION, DAMAGES      8056 Sunnyside Ave. N.
AND OTHER RELIEF  - 48                   Seattle, WA 98103
                                     (206) 419-4385