UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
CHARLES E. ORTEGO, *et al.*,                )   No. C14-1840RSL
                                            )
                   Plaintiff,              )
     v.                                     )
                                            )   ORDER CONFIRMING LISECC'S
LUMMI ISLAND SCENIC ESTATES                 )   CONTINUING AUTHORITY TO
COMMUNITY CLUB, INC., *et al.*,             )   GOVERN LISE
                                            )
                   Defendant.              )
_____)

This matter comes before the Court on "Defendants' Motion for Partial Summary Judgment Regarding Plat Covenants" (Dkt. # 90) and "Plaintiffs' Motion for Summary Judgment re: Declaratory Judgment Claims" (Dkt. # 94). Plaintiffs allege that a homeowners' association and its directors have, without authorization, assessed fees against their neighbors, thereby defrauding the purported members of the association and benefitting themselves. In their Second Amended Complaint, plaintiffs assert a number of causes of action and seek a declaration that the association's authority to collect dues and impose mandatory membership obligations on residents of Lummi Island Scenic Estates ended in 1990. Dkt. # 79 at 1 and 66.[1]

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the

---

[1] As discussed below, plaintiffs have expanded the scope of the declaratory relief sought in their motion and raised new arguments regarding the enforceability of the covenants as to the lots in divisions 1 and 2.

ORDER CONFIRMING LISECC'S CONTINUING
AUTHORITY TO GOVERN LISE

entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine dispute of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[2] and having heard the arguments of counsel, the Court finds as follows:

---

[2] The Court has considered the state court documents that were submitted by plaintiff's counsel on October 11, 2016. Defendants' motion to strike (Dkt. # 165) is DENIED.

The Court has not, however, considered the Annual Meeting Minutes from May 19, 1990 (Dkt. # 196-8), that were submitted for the first time after oral argument. Counsel was invited to submit a one-page notice of authority with no argument. The submission of substantive evidence at this late date is unauthorized and unfair (and would make no difference to the analysis regarding intent of the drafters even if it were considered).

ORDER CONFIRMING LISECC'S CONTINUING
AUTHORITY TO GOVERN LISE                -2-

## BACKGROUND

On November 2, 1959, four individuals formed a partnership for the purpose of acquiring, subdividing, and selling real estate on Lummi Island, Washington. Dkt. # 96-3 at 1. The development, Lummi Island Scenic Estates ("LISE"), was created through nine separate plats recorded between 1959 and 1965. The plat for each division provides, among other things, that specified common areas would be transferred to a homeowner's association, that ownership of a lot in the division carries with it a membership in the homeowners' association, and that owners in all of the subdivisions would have rights in all of the common areas held by the homeowners' association. One of the original partners, Moksha W. Smith, remained part of the organization throughout the development of LISE. Mr. Smith also signed the Articles of Incorporation (dated June 14, 1962) and the By-Laws (dated July 20, 1963) of the homeowner's association, Lummi Island Scenic Estates Community Club, Inc. ("LISECC"). Dkt. # 96-4 at 11 and # 97-5 at 7. LISECC was created to, among other things, manage the common areas within the development, enforce liens, restrictions, and covenants imposed on the owners, create a water system for its members, and assess charges and fees as may be necessary to carry out the purposes for which it was created. Dkt. # 96-4.

The plats creating the nine subdivisions differ in certain respects. Some of the differences, such as the width of setbacks and the preferred sewage disposal systems, are not particularly relevant to the issues raised by the parties. Two changes, however, are material. First, the plats related to divisions 1-5 specify that ownership of common areas designated on the plats will be transferred to an entity called "Lummi Island Scenic Estates Holding, Inc.," and that ownership of any lot in those subdivisions correlates to a membership in that entity. See, e.g., Dkt. # 96-2 at 2 (division 5). Plats recorded after LISECC was incorporated identify the owner of the common areas and membership entity as LISECC. See, e.g., Dkt. # 97-4 at 2 (division 6). Second, the introductory paragraph of the Dedication section of the plats changed to include a 25-year sunset provision. The plats for divisions 1 and 2 state simply that the developers declare

a plat to be known as "Lummi Island Scenic Estates" and dedicate to the public the streets and roads shown therein. That introductory statement is then followed by a list of covenants that bind future purchasers of the lots established by the plats, such as:

> "Exterior work on any building shall be completed within one year from start of construction. No imitations of any materials shall be used for exterior finish. Exterior finish shall be of wood, stone, brick, glass, concrete, or like material. Roofing can be of any standard roofing material"

and

> "Ownership of those areas marked 'Reserve' and 'Secondary Tidelands' owned will be conveyed to a private non-profit corporation to be known as 'Lummi Island Scenic Estates Holdings, Inc.' Interest in any lot carries the ownership of one membership in said corporation subject to the Articles and By-Laws thereof."

Dkt. # 9502 at 1 (division 1). The plats for divisions 3-7 and 9-10[3] have much longer introductory paragraphs that specifically identify the owners and mortgagees making the dedication and provide details regarding the reserved rights of way. In addition, these plats state:

> All lots, tracts, or parcels of land embraced within this plat *shall be subject to the following restrictions for a period of twenty-five years from the date of the recording of this plat*, and all sales or transfers of ownership of the lots, tracts, or parcels shall be subject to these RESTRICTIONS as follows:

Dkt. # 95-6 at 1 (division 3) (emphasis added). What follows is an enumerated list of covenants. The "exterior work" covenant quoted above is listed as #6, while the homeowners' association covenant is #8. The record contains no direct evidence of what prompted the insertion of the 25-year sunset provision.

The claims asserted in plaintiffs' Second Amended Complaint are based primarily on the contention that their memberships in LISECC – and that entity's authority to assess charges and impose liens against them – expired decades ago pursuant to the sunset provision. The Court

---

[3] There is no division 8 in LISE.

ORDER CONFIRMING LISECC'S CONTINUING
AUTHORITY TO GOVERN LISE              -4-

rejected this argument as to the lots in divisions 1 and 2 where the plats do not contain the sunset language. Dkt. # 40. Plaintiffs recently associated new counsel who now argues that (1) the owners of lots in subdivisions 1-5 were never members of LISECC, (2) LISECC has no authority to impose assessments or liens because such authority was not effectively granted, and/or (3) to the extent membership in LISECC arose upon purchase of a parcel in the development, that membership expired as to the owners in subdivisions 3-7 and 9-10 twenty-five years after the plats were recorded. Although the Second Amended Complaint does not give defendants fair notice of the first two arguments, they have been fully briefed and the Court has considered them in order to determine whether the claims are futile or whether leave to amend should be granted.

## DISCUSSION

Interpretation of covenants in Washington presents a question of law that is generally governed by the normal rules of contract interpretation. Wilkinson v. Chiwawa Communities Ass'n, 180 Wn.2d 241, 249 (2014). The Court's primary objective is to determine the intent or purpose of those establishing the covenants. Riss v. Angel, 131 Wn.2d 612, 621, 623 (1997). In determining intent, the "context rule" of Berg v. Hudesman, 115 Wn.2d 657 (1990), applies. Thus, the Court looks "to the surrounding circumstances of the original parties to determine the meaning of specific words and terms used in the covenants." Hollis v. Garwall, Inc., 137 Wn.2d 683, 696 (1999). Admissible extrinsic evidence may include evidence regarding the circumstances leading to the execution of the plats, the subsequent conduct of the parties, and the reasonableness of competing interpretations. Berg, 115 Wn.2d at 667-69. Correlated documents, such as articles of incorporation and by-laws, may also be considered if the circumstances of their generation and adoption show that they are indicative of the drafters' intent or purpose. Shafer v. Bd. of Trustees of Sandy Hood Yacht Club Estates, Inc., 76 Wn. App. 267, 275 (1994). The one anomaly in the rules of covenant construction is that the court

ORDER CONFIRMING LISECC'S CONTINUING
AUTHORITY TO GOVERN LISE         -5-

"will place special emphasis on arriving at an interpretation that protects the homeowners' collective interests." Riss, 131 Wn.2d at 623-24 (internal quotation marks omitted). If, after applying the normal rules of contract interpretation, there remains a factual issue regarding the drafter's intent, that issue must be resolved by the jury. Wilkinson, 180 Wn.2d at 250.

The Court considers plaintiffs three arguments in light of the governing rules of interpretation.

**A. Membership in LISECC – Divisions 1-5**

Plaintiffs argue that, because the plats for divisions 1-5 identify the homeowners' association as Lummi Island Scenic Estates Holdings, Inc., "[t]here is no evidence that the dedicators intended to subject Plats 1 through 5 to LISECC." Dkt. # 94 at 22. This argument is wholly unpersuasive. It is clear that the developers intended to form a homeowners' association and to give each purchaser a membership in that association. At the beginning of the development process, the partners apparently believed that the association would be called Lummi Island Scenic Estates Holdings, Inc. It was instead incorporated as Lummi Island Scenic Estates Community Club, Inc., in the midst of the development project. Mr. Smith, one of the original developers, signed the Articles of Incorporation for LISECC and served as its trustee. The corporation was formed to fulfill the duties of the homeowners' association identified in the plats and was charged with managing all of the real property developed and sold in LISE. Dkt. # 96-4 at 8-9. All subsequent plats identify the homeowners' association as LISECC.

It is clear from the surrounding circumstances that the owners intended the purchasers of lots in each and every division to be members of a single homeowners' association and that the entity incorporated on June 14, 1962, was that association. Plaintiffs offer no reasonable alternate explanation regarding the intent of the drafters or explain why the name of the association should take precedence over the clear and material intent to grant authority over the entire development to a single membership-based entity. The fact that the initial plats made no

provision for a corporate name change does not alter the intent of the parties on this issue. The Washington court of appeals was faced with a similar problem in Jensen v. Lake Jane Estates, 165 Wn. App. 100 (2011): the founder of Lake Jane Estates recorded restrictive covenants and reserved the power of enforcement to itself and/or the T&J Maintenance Company. When a successor entity, Lake Jane Estates, sought to enforce the covenants, a landowner sued arguing that the successor was not authorized to exercise the predecessor's powers. The court noted:

> Where a subdivision developer drafts and records restrictive covenants and reserves the power to enforce those covenants for itself but does not explicitly state whether its successors or any other entity will have that authority, Washington courts acknowledge that the purposes of the covenants as well as the expectations of the property owners would be frustrated if the power to enforce the covenants ended when the developer ceased to exist.

Jensen, 165 Wn. App. at 106. The same analysis applies here. The clear intent of the drafters regarding the plan of development and attendant homeowners' association will not be thwarted simply because they decided on a different name for the entity. Thus, neither the facts surrounding the creation of the plats nor the law support plaintiffs' contention that owners in divisions 1-5 were never members in a homeowners association. Just as compelling is the conduct of the interested parties for at least fifty years after plat 1 was recorded. Until July of 2016, all parties in any way connected with LISE acted on the assumption that all owners, regardless of the location of their property, were intended to be and had become members of LISECC when the lots were first sold. The fact that a lawyer, years after the fact, has been able to articulate a problem in the founding documents does not overcome the evidence of intent found in the surrounding circumstances or the way in which the parties subsequently conducted themselves.

The Court will, consistent with Washington law, interpret the covenant in the way that protects the homeowners' collective interests and expectations while giving effect to the purposes intended by the drafters, namely to create a single homeowners' association for the

ORDER CONFIRMING LISECC'S CONTINUING
AUTHORITY TO GOVERN LISE                -7-

LISE development. Plaintiffs' request for a declaration that the owners of lots in divisions 1-5 were never members of LISECC is DENIED. To the contrary, at least until July 28, 1986, all purchasers of lots in LISE acquired a membership in, and were subject to the authority of, LISECC.

**B. LISECC's Authority to Impose Assessments, Dues, or Liens**

Plaintiffs raise a straw man argument, namely that LISECC's By-Laws cannot confer upon LISECC the right to impose dues, assessments, or liens on plaintiffs or their property. Defendants have not, however, claimed that LISECC's authority comes solely from its By-Laws. Each and every plat states that ownership of a lot in that particular division carries with it a membership in the homeowners' association, subject to the association's Articles of Incorporation and By-Laws. Although the Articles of Incorporation were not filed for 2 ½ years after division 1 was platted, they were drafted in the midst of the development project, between the platting of divisions 5 and 7. The developers intended from the beginning – and made the first purchasers aware – that ownership in the development would subject the purchaser to the authority of a homeowners' association, that the homeowners' association would own the common areas of the development, that a private water system was contemplated, and that the association's rights and responsibilities would be defined in formation documents that were not yet in existence. The Articles filed on June 14, 1962, specifically authorize LISECC to "fix, establish, levy and collect annually such charges and/or assessments as may be necessary, in the judgment of the board of trustees[,] to carry out any or all of the purposes for which this corporation is formed, but not in excess of the maximum from time to time fixed by the Bylaws." Dkt. # 96-4 at 6. LISECC was also empowered to "enforce liens, charges, restrictions, conditions and covenants existing upon and/or created for the benefit of parcels of real property over which said corporation has jurisdiction . . . ." Dkt. # 96-4 at 5. Plaintiffs do not address, much less identify any defect in, these authorizations.

The parties' subsequent conduct shows that LISECC's authority over various aspects of the development, including the assessment of dues and imposition of liens to enable the association to carry out its duties, was the expected and intended result. As set forth in the various plats, LISECC came into existence with all owners as members and took ownership of the reserve and tideland areas marked on the plats. As specified in the Articles of Incorporation, LISECC constructed a reservoir for the storage and distribution of water within LISE, operated recreational facilities (including a marina, clubhouse, swimming lake, and cabana) for the benefit of development residents, and fixed charges to cover the costs of such activities. The Court finds this conduct, all of which was in motion in the 1960s, to be indicative of the intent of the parties given the clarity of the written documents and the lack of any objection. At least one court has found similar conduct to be a ratification:

> It is undisputed that the Property Owners participated in the Association to varying degrees after it was created. All paid dues for over three years. Some served on the Board; others served on committees. Some submitted requests for property improvement to the Association for approval. All attended meetings in person or by proxy. The Property Owners clearly were aware of all the facts and accepted benefits from the Association. In these circumstances, they cannot now claim the Association lacks authority.

Ebel v. Fairwood Park II Homeowners' Ass'n, 136 Wn. App. 787, 794 (2007).

Finally, Washington case law supports the conclusion that a reference in a recorded document to a homeowners' association, obligatory membership, and governing Articles and By-Laws is sufficient to bind purchasers and their successors to the payment of reasonable assessments and fees as established by the association. In Lake Limerick Country Club v. Hunt Mfg. Homes, Inc., 120 Wn. App. 246 (2004), for example, the court found that later-created documents (such as a recorded notice or the Articles of Incorporation) gave rise to an enforceable obligation to pay dues on the part of the original and subsequent purchasers. In Shafer, 76 Wn. App. 267, the court concluded that a clause in the governing plat notifying future

ORDER CONFIRMING LISECC'S CONTINUING
AUTHORITY TO GOVERN LISE                    -9-

purchasers that the restrictive covenants were "subject to" the articles of incorporation and by-laws of the homeowners' association adequately reserved to the association the power to enact new covenants and obligations (as long as it complied with its own established processes and exercised its discretion in a reasonable manner consistent with the general plan of the development). Plaintiffs have not identified any procedural irregularities in the way LISECC's Articles of Incorporation were created and have not argued that the authorization to assess dues or fees was unreasonable.

Plaintiffs' request for a declaration that LISECC never had the authority to levy assessments or charges against its members is DENIED.

**C. Sunset Provision**

Plats 3-7 and 9-10 provide that:

> All lots, tracts, or parcels of land embraced within this plat shall be subject to the following restrictions for a period of twenty-five years from the date of the recording of this plat, and all sales or transfers of ownership of the lots, tracts, or parcels shall be subject to these RESTRICTIONS as follows:

Dkt. # 95-6 at 1 (division 3). There is no direct evidence of what prompted the developers to add a sunset provision to the paragraph introducing the covenants that would govern LISE. The extrinsic evidence regarding the circumstances in which LISE was developed and inferences drawn from the record suggests a number of possibilities. One explanation may be that when the engineer/land surveyor who prepared the plats changed between the recording of plat 2 and plat 3, he simply used a different form of document with no real intention on the part of the developers. Another may be that, as the development process went on, the dedicators realized that specific restrictions on set backs, building materials, and sewage disposal systems might not stand the test of time and decided that an expiration date was appropriate. It is also possible that potential purchasers in LISE were unwilling to subject themselves to a perpetual homeowners' association and convinced the developers to add a sunset provision that would allow a

reasonable time for the development of the common areas and water distribution system before the association expired.

The language of the sunset provision does not clarify the intent and purpose of the developers in this matter. The dedication subjects the lots in LISE to "the following restrictions for a period of twenty-five years . . . and all sales or transfers of ownership of the lots, tracts, or parcels shall be subject to these RESTRICTIONS as follows:". Plaintiffs argue that everything after the semicolon, which includes most of the covenants governing LISE, is thereby defined as a "restriction" and that all of the enumerated rights, restrictions, duties, and obligations expired after twenty-five years. Defendants argue that the phrase "the following restrictions" is not definitional and that the sunset provision applies only to those covenants that are, in fact, restrictions. Both arguments have some merit. The ordinary meaning of "restriction" involves concepts of limitation or constraint: it does not usually sweep within its purview positive rights or entitlements. On the other hand, the developers intended that the lots be subject to each and every covenant listed after the semicolon, either temporarily or permanently, suggesting that "restrictions" applies to all of the enumerated covenants, not just those that constrain or limit the purchaser's actions.

The Court therefore turns to the subsequent conduct of the parties. On June 14, 1962, less than one year after the sunset provision first appeared in a LISE plat, LISECC was incorporated. Mr. Smith, one of the original partners in LISE, was an incorporator and agreed to serve as a trustee of the corporation. Mr. Smith and his co-incorporators established LISECC as a perpetual corporation to exercise certain powers and duties over "all real property developed and sold by Lummi Island Scenic Estates . . . ." Dkt. # 96-4 at 8-10. The By-Laws, which were signed by Mr. Smith as the Secretary of LISECC on July 20, 1963, discuss in great detail the relationship between ownership of a lot in LISE and membership in LISECC. Dkt. # 97-5 at 1-2. Membership is extended to the owners or purchasers of property as described in the Articles of

ORDER CONFIRMING LISECC'S CONTINUING
AUTHORITY TO GOVERN LISE                -11-

Incorporation. Dkt. # 97-5 at 1 (incorporating Dkt. # 96-4 at 8-9). There is no provision for any means of forfeiting or withdrawing from the membership other than by transfer of the lot to which the membership is "inseparably appurtenant." Dkt. # 97-5 at 1. There is no reference to any anticipated changes in the scope of the membership, nor are there any provisions made for conducting or funding LISECC's operations if its membership were to drop precipitously between July 1986 and August 1990.

In 1968, LISECC began developing the water service mentioned in the plats and the Articles of Incorporation. In May 1969, pursuant to a resolution passed by LISECC's board the previous year, LISECC recorded a notice in the property records of Whatcom County to the effect that all lots within LISE, including each of the nine separate divisions, are subject to annual assessment for maintenance and improvements pursuant to the governing documents. Dkt. # 97-9. LISECC's By-Laws were amended a number of time throughout the 1970s and 1980s: none of the amendments made provision for a cascading loss of membership. Dkt. # 98-1 and # 98-13. At some point in the mid-1980s, LISECC had its attorney review the impact of the sunset provision. Although a copy of the 1985 legal opinion has not been provided, the attorney apparently concluded that association membership was not a restriction on the use of the land and would therefore be unaffected. Dkt. # 119-4 at 3. LISECC developed policies for collecting dues and assessments and made amendments thereto long after the sunset provision was supposed to take effect. Dkt. # 98-13 at 78. The homeowners' association recorded a 1990 notice of right to impose liens and a 1995 notice that it would strictly enforce the construction restrictions set forth in the nine plats. Dkt. # 98-11; Dkt. # 98-12. Deeds of sales related to property in divisions 3-7 and 9-10 during the relevant time period do not indicate that a loss of LISECC authority had or would occur. A deed of sale from June 1987, for example, simply noted that the purchase was subject to the "Covenants, Conditions and Restrictions contained in" plat 6 and the May 1969 notice of assessments. Dkt. # 98-8. A deed for a lot in division 4 from

August 2001 included a verbatim recitation of the covenants found in the governing plat without any reference to the sunset provision. Dkt. # 98-14 at 4-6. If LISECC or any of its members thought, prior to the mid-2000s, that the association's authority over all of the lots in LISE had expired under the sunset provision, it is not apparent from the record.[4]

Finally, the Court considers the reasonableness of the parties' competing interpretations with special emphasis on arriving at an interpretation that protects the homeowners' collective interests. As plaintiffs' previously recognized, the intent of the original partners was to create a unified development with uniform obligations in each part, shared access to common areas and amenities, and a single homeowners' association to manage it all. See, e.g., Dkt. # 30. Plaintiffs' theory sunders the development, however, creating two categories of owners, one of which is subject to the plat covenants and membership in the homeowners' association while the other is not. The owners in divisions 3-7 and 9-10 would lose any voice in how common areas are managed or maintained and be cut off from the private water service maintained by LISECC for its members.[5] The owners in divisions 1 and 2, meanwhile, would be forced to maintain their membership in LISECC even as the owners in the other seven divisions drop out of the association. Holding all of the community assets and organizational responsibilities, a fraction of the original membership would have all of the duties and rights of LISECC with less than a quarter of its current fundraising capabilities and manpower. Plaintiffs argue that a means for continuing to provide water and other services to the development could be negotiated on a voluntary basis, possibly involving the dedication of common areas to the county and/or conversion of the water system into a public utility. The point, however, is that the chaos

---

[4] There is evidence of disputes between one or more plaintiffs and LISECC over the years (see, e.g., Dkt. # 91-1 at 6), but the contours of the expiration argument pursued in this litigation are of more recent vintage (see, e.g., Dkt. # 91-3 at 3).

[5] The Articles of Incorporation preclude LISECC from disposing of the water resources as a public utility. Dkt. # 96-4 at 6.

ORDER CONFIRMING LISECC'S CONTINUING
AUTHORITY TO GOVERN LISE                    -13-

engendered by the adoption of plaintiffs' interpretation of the plats suggests that it is not the correct interpretation.

Applying the context rule articulated in Berg, 115 Wn.2d 657, and explained and refined in Hollis, 137 Wn.2d at 693-96, the Court finds that the drafters did not intend to sunder the membership of the homeowners' association within LISE between 1986 and 1990. Each owner in the development was intended to have a perpetual membership in the association, inseparably appurtenant to the land, subject to the refinements set forth in the Articles and By-Laws. The Court need not determine whether the developers were unaware of the sunset provision when it appeared in plat 3 or whether they intended that the provision apply only to those covenants that limit or curtail an owner's activities. Suffice it to say that, as a matter of law, the drafters did not intend to break the homeowners' association apart, piece by piece, over a five year period. Plaintiffs are not entitled to a contrary declaration.

For all of the foregoing reasons, defendants' motion (Dkt. # 90) is GRANTED and plaintiffs' motion (Dkt. # 94) is DENIED. The owners of property in LISE remain subject to the authority and governance of LISECC: the sunset provision in plats 3-7 and 9-10 does not affect the obligation and right of membership set forth in the covenants. Any claims based on the assertion that LISECC lacks the authority to govern LISE, make assessments, and/or impose liens are hereby DISMISSED with prejudice and without leave to amend. Defendants' motion to strike (Dkt. # 165) is DENIED.[6]

//

---

[6] The Court reserves ruling on the attorney's fee issue until all matters are resolved.

ORDER CONFIRMING LISECC'S CONTINUING
AUTHORITY TO GOVERN LISE                -14-

1  Dated this 21st day of November, 2016.

*[signature]*

Robert S. Lasnik
United States District Judge

ORDER CONFIRMING LISECC'S CONTINUING
AUTHORITY TO GOVERN LISE             -15-